In re Carroll Richard OLSON and Mona Melva Olson, d/b/a Olson Farms, f/d/b/a Olson Fur Company, Inc., f/d/b/a Western Fur Company, Inc., Debtors/Appellants.

Civ. No. 86–4138.
Bankruptcy No. 81–20475.
Adv. No. 81–0711.

United States District Court,
D. Kansas.

Sept. 11, 1989.

Martin R. Ufford, Redmond, Redmond, O'Brien & Nazar, Wichita, Kan., for PCA.

James E. Kunce, Kansas City, Kan., trustee.

Paul D. Post, P.A., Topeka, Kan., for debtors.

Carroll Richard Olson, Mona Melva Olson, Mapleton, Kan., pro se.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This bankruptcy has a long and tortured history. During the course of the proceedings, the debtors have had nine different attorneys represent them. Various aspects of the bankruptcy have been considered by three bankruptcy judges in the district and three district court judges. The bankruptcy is presently before this court upon an appeal arising from an adversary proceeding. The debtors/appellants appeal from an order of the bankruptcy court granting default judgment to the Chanute Production Credit Association (PCA) in the adversary proceeding, 61 B.R. 384 (1986). The court has carefully reviewed the briefs filed by the parties and is now prepared to rule.

The facts pertinent to the issues before the court are as follows: The debtors filed a Chapter 7 bankruptcy petition on May 26, 1981. On October 7, 1981, PCA filed a complaint for determination excepting debt from dischargeability. PCA sought to de-

---

termine the dischargeability of $176,026.15 owed them by the debtors. In the complaint, PCA alleged that the debtors had made false representations in the financial statements and security agreements provided to the PCA. PCA further alleged that the debtors had sold collateral pledged and mortgaged to the PCA without remitting the proceeds to them. On November 5, 1982, PCA filed applications for examinations of the debtors pursuant to Bankruptcy Rule 205 (now Rule 2004). These applications were granted, and the examinations were to take place on November 16, 1982. The debtors failed to appear because their attorney sought to withdraw on November 12, 1982. At this point in the bankruptcy, this attorney was their third attorney. Subsequently, on June 13, 1983, another attorney entered an appearance for the debtors. On August 30, 1983, PCA filed another application for examination of the debtors pursuant to Bankruptcy Rule 205. In November, 1983, counsel for the PCA and counsel for the debtors agreed to schedule the debtors' examinations for November 14, 1983. Thereafter, debtors advised counsel for the PCA that they would not appear for the scheduled examinations. On February 28, 1984, PCA filed another application to examine the debtors pursuant to Bankruptcy Rule 2004. The debtors responded with a motion for protective order. In this motion, debtors argued that the PCA was barred from pursuing their complaint because of their inaction during the proceeding. On April 18, 1984, the bankruptcy court granted the PCA's application for examination of the debtors. The court stated in part:

2. The delays in the taking of the 2004 Examinations in this adversary action were caused by the action of the debtors who have retained five different attorneys since they filed their Chapter 7 Petition on May 26, 1981.

3. The PCA has not been guilty of latches [sic] in pursuing the complaint it filed in this adversary proceeding and is entitled to take a 2004 Examination of both of the debtors in this case.

4. Although the debtors have failed to attend previously scheduled 2004 Examinations ordered by the court in this case, the court will give the debtors one more opportunity to submit to a 2004 Examination conducted by the plaintiff before the court will entertain a motion for sanctions by the plaintiff in the event the defendants fail to appear for their 2004 Examinations as ordered by the court.

The court ordered the examinations to take place on May 21, 1984. The court further directed the debtors to bring all relevant documents and records in their possession or control to the examinations.

On May 21, 1984, the debtors appeared for the scheduled examinations. They brought some records, but provided vague answers as to where the remaining records were located and generally failed to account in any detail for the livestock in which PCA claimed a security interest. On August 13, 1984, PCA served requests for admission upon the debtors and filed a motion for accounting. In the motion, PCA sought an accounting of all livestock pledged to PCA since February 10, 1978. This motion was initially denied, but was later reinstated upon PCA's motion. The motion was granted by the bankruptcy court on January 2, 1985. The bankruptcy court ordered the debtors to provide an accounting by February 1, 1985. On January 14, 1985, the debtors filed a notice of appeal from the order requiring an accounting. However, the appeal was subsequently dismissed for lack of prosecution on April 23, 1985. The debtors also filed a motion to close the adversary proceeding on January 14, 1985, arguing once again that the delays and inaction by the PCA barred the PCA's complaint pursuant to 11 U.S.C. § 727(e)(2). The bankruptcy court denied this motion on March 12, 1985 and stated that the debtors' argument had previously been rejected by the court. On February 12, 1985, PCA filed a motion for sanctions and default judgment. PCA sought sanctions for the debtors' failure to comply with previous discovery orders, including the accounting that was ordered by the bankruptcy court on January 2, 1985. On April 21, 1986, the bankruptcy court

granted PCA's motion for sanctions and default judgment. The bankruptcy court found that the debtors had resisted discovery in the adversary proceeding with dilatory and evasive tactics since November, 1982. The court concluded that the debtors had not offered any legitimate justification for their failure to comply with discovery orders. The court entered default judgment under Fed.R.Civ.P. 37(b)(2)(C) against the debtors in the amount of $176,026.15. This appeal followed.

The debtors first contend in this appeal that the bankruptcy court erred in concluding that they had hindered the discovery process in the adversary proceeding. They next argue that the sanction imposed by the bankruptcy court was too harsh. Finally, they assert that the bankruptcy court should have conducted a hearing on the issue of damages.

■ Fed.R.Civ.P. 37 applies in adversary proceedings in the bankruptcy court. Bankr.R. 7037; *In re Visioneering Construction*, 661 F.2d 119, 123 (9th Cir.1981). The protections and sanctions found in Rule 37 are not absolute and contemplate the use of judicial discretion. *Marshall v. Ford Motor Co.*, 446 F.2d 712, 713 (10th Cir.1971). This court will not reverse the imposition of sanctions imposed under Rule 37 in the absence of an abuse of discretion. *In re Standard Metals Corp.*, 817 F.2d 625, 628 (10th Cir.1987).

The sanction of dismissal or default judgment under Rule 37 is undeniably a severe penalty. Such a sanction is usually appropriate only where a lesser sanction would not serve the interest of justice. *Meade v. Grubbs*, 841 F.2d 1512, 1520 (10th Cir. 1988). In evaluating the propriety of the bankruptcy court's entry of default judgment, we must consider three aggravating factors: (1) the degree of actual prejudice to the plaintiff; (2) the amount of interference with the judicial process; and (3) the culpability of the litigants. *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1396 (10th Cir.1988). "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on the merits ... is [default judgment] an appropriate sanction." *Meade v. Grubbs, supra*, at 1520 n. 7.

■ Debtors first contend that they did not hinder the discovery process in the adversary proceeding. In support of this argument, debtors focus almost exclusively on the Rule 2004 examinations. Debtors assert that they did attend their scheduled examinations and they did produce the documents they had in their possession. The debtors mention only briefly their failure to comply with the bankruptcy court's order requiring an accounting. The debtors offer no explanation for their failure to comply with that order. They indicate only that the bankruptcy court noted in its order granting default judgment that a "motion for accounting" is not one of the discovery devices listed in Fed.R.Civ.P. 26(a). Thus, they suggest that default judgment should not be entered based on their refusal to comply with an order which has no basis under the Federal Rules of Civil Procedure.

The record shows that prior to their attendance at the scheduled examinations on May 21, 1984, debtors had failed to appear at one examination ordered by the court and one examination agreed to by counsel for both sides. In granting the application for the examinations of May 21, 1984, the bankruptcy court found that the prior delays in the taking of the examinations were caused by the actions of the debtors.

The court finds no merit to the debtors' argument that they did not hinder the discovery process in the scheduling of the Rule 2004 examinations. The record reveals quite clearly that the debtors used several tactics to repeatedly delay the examinations. Primarily, the debtors sought to change counsel each time an examination was scheduled. The court recognizes that parties may have to at times find new counsel, but the record of the debtors in this bankruptcy is unprecedented. The bankruptcy court's conclusion that the debtors changed counsel as a dilatory tactic is well supported by the record.

The court shall next consider the debtors' conduct once they decided to attend the scheduled examinations. Prior to the ex-

aminations, the bankruptcy court specifically directed them to bring all documents and records in their possession or control which related to the debtors' business since February 10, 1978. The testimony provided by the debtors at the examinations of May 21, 1984 clearly suggests their failure to seriously respond to the bankruptcy court's orders. The transcripts of the debtors' examinations indicate that they made little effort to comply with the bankruptcy court's order, and that effort began only the night before the examinations. During his examination, Carroll Richard Olson stated as follows:

Q. Do you have any records with you here today that would show how many head of cattle you owned as of [February 20, 1978]?

A. *Not that I know of.*

Q. You have no records showing how many cattle you owned as of February 20, 1978 with you today?

A. *No.*

Q. Do you know who would have any such records?

A. *No, I don't.*

Q. Would you have given those records to any of the parties you previously identified as having some of your records.

A. *That's possible.* The attorney in Wichita might have them, but that's quite sometime ago.

.    .    .    .    .

Q. Mr. Olson, do you have any records in your possession, custody or control that would reconcile the number of cattle you owned between January 20, 1978 and January 24, 1979?

A. *Not with me. I might be able to secure records,* but my son owned half, I owned half, me and my wife owned half.

Q. Are you saying you have those records and you didn't bring them here today?

A. *I don't know.* I brought all the records I could find at my house, and I don't have the money to travel to Wichita to get my stuff from the attorneys. And my daughter has some stuff in her safe deposit box, and she lives in Wichita.

.    .    .    .    .

Q. And prior to coming here today, you made no efforts to contact any other parties who may possibly have any other documentation?

A. *No.* I did—the attorney that represents me on the appeal in Wichita, he was on vacation when I attempted to contact him.

Examination of Carroll Richard Olson of May 21, 1984, pp. 6, 46, 47, 50 (emphasis added).

Next, we turn to the debtors' failure to comply with the bankruptcy court's order requiring an accounting. The record is undisputed that the debtors failed to comply with this order. The debtors respond only that the Federal Rules of Civil Procedure do not provide for a "motion for accounting," and thus any sanction based on their failure to comply is improper.

The bankruptcy court noted that a "motion for accounting" is not one of the discovery methods listed in Fed.R.Civ.P. 26(a). Nevertheless, the court determined that the PCA's motion was "a discovery tool comparable to an interrogatory under Rule 33 combined with a motion and order to compel comparable to one under Rule 37(c)." Accordingly, the bankruptcy court held that sanctions could be imposed for the debtors' failure to comply.

We agree with the analysis adopted by the bankruptcy court. In the written materials provided to the bankruptcy court, the debtors never raised the argument that the motion was improper under the Federal Rules of Civil Procedure. The debtors failed to raise any valid reason why they did not comply with the order for an accounting. The device used by the PCA was much like combining an interrogatory with a motion to compel. The bankruptcy court correctly concluded that the debtors without any justification failed to comply with the court ordered accounting.

The debtors have also argued that the sanction imposed by the bankruptcy court

was too harsh. In support of this argument, debtors assert that they "never 'flat refused' to do anything." They contend that the sanction of default judgment should only be imposed when a party has acted willfully or in bad faith.

In reviewing this argument, we must consider the factors set forth by the Tenth Circuit in *Hancock* and *Meade*. The court's evaluation of those factors under the circumstances of this case indicates that the sanction imposed by the bankruptcy court was appropriate. The prejudice to the PCA in this instance is obvious. The efforts of the PCA to obtain relief in the bankruptcy were consistently obstructed by the debtors. The judicial process was constantly halted as the debtors used dilatory tactics to prolong the proceedings. The debtors, not their attorneys, were responsible for the majority of the delays. The debtors refused to appear at examinations agreed to by their counsel and chose to find new counsel when deadlines arrived. The actions of the debtors were without justification, and the sanction imposed was indeed harsh but was not an abuse of discretion.

Finally, we consider the debtors' argument that the bankruptcy court should have conducted a hearing on the issue of damages. Debtors, relying on *In re Attorney General of United States*, 596 F.2d 58 (2d Cir.1979), contend that such a hearing was required. We disagree for several reasons. First, the case cited by the debtors provides no support for their argument. The issue of whether a hearing is necessary prior to the imposition of damages after sanctions have been assessed under Rule 37 was not even addressed in that case. Second, the Tenth Circuit has suggested in *Norman v. Young*, 422 F.2d 470, 474 (10th Cir.1970), that there is no need to produce evidence in cases imposing sanctions under Rule 37. Finally, even if the usual rule applied—a court may not enter a default judgment without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation, *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir.1983)—we would conclude that a hearing was not required in this case because the amount claimed by the PCA was a liquidated sum. Accordingly, the bankruptcy court did not err in not holding a hearing on damages.

In sum, the court finds that the bankruptcy court did not abuse its discretion in imposing the sanction of default judgment against the debtors. The judgment of the bankruptcy court is hereby affirmed.

IT IS SO ORDERED.