In re Eli **SOFRO** and Lori Lynn Sofro, Debtors.

Milton Gene **FRIEDMAN**, Trustee, Plaintiff,

v.

Herbert **DRUCKER**, Defendant.

Bankruptcy No. 89–01018–BKC–SMW. Adv. No. 90–0186–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Aug. 10, 1990.

Gary J. Rotella, Rotella and Boone, P.A., Ft. Lauderdale, Fla., for trustee Milton Friedman.

Jerald A. Goldstein, Boca Raton, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Chief Judge.

THIS CAUSE, having come before the Court on Monday June 11, 1990, at 8:00 A.M. for reconsideration of Trustee, Milton Gene Friedman's, (hereinafter referred to as "PLAINTIFF") Renewed Emergency Motion To Strike Defendant's Pleadings And For Entry Of Default And Final Default Judgment, and the Court having considered all of PLAINTIFF'S previous applications; motions and the Court orders related to the production of documents, books and records of account; the Affidavit of Non–Compliance In Support of Renewed Motion To Strike Defendant's Pleadings And For Default And Final Default Judgment dated June 11, 1990; the deposition testimony taken during the course of these proceedings; the live testimony of PLAINTIFF'S witness, Gary I. Handin, Esquire; the documentary evidence received by the court; PLAINTIFF'S Memorandum of Law; and the arguments of counsel, and being otherwise more fully and completely advised in the premises, does hereby enter the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

On March 6, 1989, Eli Sofro and his wife, Lori Lynn Sofro, (hereinafter referred to as "DEBTORS") filed their voluntary Chapter 7 bankruptcy petition with the clerk of this Court, the same having been assigned case no. 89–01018–BKC–SMW. On even date, Eli Sofro also filed separate voluntary Chapter 7 bankruptcy petitions for three of his wholly owned corporations, these being Rental Journal Inc., assigned case no. 89–01015–BKC–SMW; Sun Star Publishing, Inc., assigned case no. 89–01016–BKC–SMW; and, Journal Press & Graphics Inc., assigned case no. 89–01017–BKC–SMW. PLAINTIFF was duly appointed and is the qualified and acting trustee of all of the aforesaid estates by order of Court dated March 7, 1989.

On April 13, 1990, PLAINTIFF commenced this adversary proceeding by filing a Complaint To Avoid Preferential/Fraudulent Transfer And For Turnover against the defendant, Herbert Drucker, (hereinafter referred to as "DEFENDANT"). On April 30, 1990, PLAINTIFF caused to be filed the Application For Examination Pursuant To Rule 2004 of the Rules of Bankruptcy Procedure Duces Tecum, to which was appended Exhibit "A" requesting the production of documents, books and records of account detailed by 29 independent paragraphs. On even date, PLAINTIFF caused to be filed a Motion To Shorten Time To Respond To Request For Production. This Court entered its Order Authorizing Bankruptcy 2004 Examination on May 3, 1990, ordering DEFENDANT to appear for his Bankruptcy Rule 2004 Examination on the 10th day of May, 1990. Specifically, the order stated that: *"Furthermore, HERBERT DRUCKER, is directed to produce on that same day and place the documents, books and records listed on Exhibit "A" attached to the application pursuant to Bankruptcy Rule 9016 and Rule 45."* (emphasis added).

DEFENDANT subsequently filed a Motion For Protective Order on May 9, 1990, essentially asserting that his attorney had a "conflict" and was unable to appear consistent with the Court's Order Authorizing Bankruptcy Rule 2004 Examination dated May 3, 1990. The Motion For Protective Order also specifically stated, with respect to the Request For Production, that *"[s]aid documents can be produced on or about May 17 and 18 which would be a perfect time for the deposition."* (emphasis added).

This Court heard the Motion For Protective Order on Monday, May 14, 1990, and denied the same. The Order On Motion For Protective Order Nunc Pro Tunc denying said motion was entered on May 22, 1990. The order specifically stated that:

*"HERBERT DRUCKER is ordered to produce all documents, books and records of account listed on Exhibit "A" attached to the application for examination pursuant to rule 2004 of the rules of bankruptcy procedure duces tecum and order authorizing bankruptcy 2004 examination dated May 3, 1990 pursuant to Bankruptcy Rule 9016 and 45."* (emphasis added). Pursuant to said order, the examination was then scheduled for Thursday, May 17, 1990, at 1:00 p.m. DEFENDANT agreed to produce the documents, books and records of account listed on Exhibit "A" on Wednesday, May 16, 1990, so as to permit PLAINTIFF and his attorney ample opportunity to review the same prior to taking the Rule 2004 Examination.

Inconsistent with this Court's Order Authorizing Bankruptcy 2004 Examination dated May 3, 1990, and this Court's Order On Motion For Protective Order Nunc Pro Tunc dated May 22, 1990, DEFENDANT produced only a small fraction of the documents, books and records of account as listed on Exhibit "A". On Thursday, May 17, 1990, DEFENDANT, together with his counsel, Jerald A. Goldstein, appeared for the taking of the Rule 2004 Examination at 1:00 p.m., and the same was commenced. Throughout the course of this examination, DEFENDANT acknowledged that the vast majority of requested documents, books and records of account as listed on Exhibit "A" had not been produced and DEFENDANT failed to provide, in most instances, any justification or explanation for his noncompliance with this Court's orders.

At the conclusion of the May 17, 1990, 2004 Examination of DEFENDANT, however, the parties and their respective counsel agreed that said examination would reconvene the following day, Friday, May 18, 1990, at 12:00 noon, at which time DEFENDANT would produce those documents, books and records of account not yet produced. Moreover, they agreed that PLAINTIFF'S attorney would prepare and address a correspondence to DEFENDANT setting forth with specificity all documents, books and records of account to be produced by DEFENDANT on the following day. DEFENDANT agreed to telephone PLAIN-TIFF'S attorney at 9:00 a.m. the following morning and to provide a facsimile number where the communication could be sent. No such telephone call was forthcoming from DEFENDANT. Instead, a telephone call from his attorney was received by PLAINTIFF'S attorney advising that DEFENDANT was not going to appear further for his Rule 2004 Examination. At DEFENDANT'S attorney's direction, the correspondence setting forth the agreement with respect to the detailed list of items that were to have been produced on that day was telefaxed to his law offices.

On May 23, 1990, PLAINTIFF, through his counsel, caused to be filed an Amended Emergency Motion To Strike Defendant's Pleadings And For Entry Of Default And Final Default Judgment (hereinafter referred to as "AMENDED EMERGENCY MOTION") together with numerous other Emergency Motions For Contempt And Sanctions And Compelling Discovery against DEFENDANT'S wife, Harriett Drucker, and the DEBTORS, Eli and Lori Sofro. Said motions were heard before this Court on May 25, 1990, at 8:00 a.m. The arguments of PLAINTIFF'S counsel focused around this Court's orders requiring the production of documents, books and records of account, as well as, the testimony of DEFENDANT from his May 17, 1990, Rule 2004 Examination.

At that hearing, PLAINTIFF'S counsel established that on approximately 32 occasions during DEFENDANT'S Rule 2004 Examination, when questioned about his failure to produce certain documents, books and records of account, DEFENDANT responded that there was either no reason for his not producing the same, that somebody else was responsible for the production, that he did not have the documents, or that he had them and would produce them.

On May 29th, 1990, this Court entered its Order On Amended Emergency Motion To Strike Defendant's Pleadings And For Entry Of Default And Final Default Judgment, Emergency Motions For Contempt And Sanctions And For Compelling Discovery, and Motion For Protective Order, which in pertinent part provided:

"ORDERED AND ADJUDGED as follows:

1. The Court reserves ruling on the Amended Emergency Motion To Strike Defendant's Pleadings And For Entry Of Default And ·Final Default Judgment, however, the defendant Drucker, is hereby ordered by the Court as follows:

a. To comply fully and completely with this Court's Order Authorizing Bankruptcy Rule 2004 Examination dated May 3, 1990, and to present himself for the taking and completion of the examination;

b. To produce each and every document, book and record of account as the same is required at Exhibit "A" "Documents To Produced at Rule 2004 Examination" appended to the Order Authorizing Bankruptcy Rule 2004 Examination;

c. To produce those documents, books and records of account as listed in Mr. Rotella's correspondence addressed to defendant Drucker dated May 18, 1990; and

d. To produce every other document, book and record of account which defendant Drucker has agreed to produce at prior examinations.

2. *In the event that defendant Drucker fails to comply in every respect with the requirements of the preceding paragraph this Court will grant the Amended Emergency Motion To Strike Defendant's Pleadings And For Entry Of Default And Final Default Judgment, and enter final judgment in favor of the plaintiff as requested."* (emphasis added).

Consistent with the above, the Rule 2004 Examination of DEFENDANT reconvened on May 30, 1990. At that time, DEFENDANT again violated this Court's orders. In fact, DRUCKER produced only one additional document on this date. The Court's review of the Rule 2004 Examination testimony indicates that DEFENDANT offered little or no explanation or justification for his failure and refusal to produce all of the documents, books and records of account as required by this court's numerous orders. Specifically, on approximately 17 occasions when questioned about his failure to produce documents, books and records of account, DEFENDANT, again, as he did at his Rule 2004 Examination on May 17, 1990, responded that there was either no reason for not doing so, that somebody else was responsible for the production, that he did not have the documents or that he had them and would produce them.

In light of this Court's order of May 29, 1990, wherein the Court stated that:

"2. *In the event that defendant Drucker fails to comply in every respect with the requirements of the preceding paragraph this Court will grant the Amended Emergency Motion To Strike Defendant's Pleadings And For Entry Of Default And Final Default Judgment, and enter final judgment in favor or the plaintiff as requested."* (emphasis added), PLAINTIFF filed on June 5, 1990, the Renewed Emergency Motion To Strike Defendant's Pleadings And For Entry Of Default And Final Default Judgment, (hereinafter referred to as "RENEWED EMERGENCY MOTION") and the hearing was set for June 6, 1990, at 1:30 p.m. Much to the Court's dismay, DEFENDANT'S attorney placed a telephone call to this Court at 2:00 p.m. on the hearing day indicating his inability to be in attendance. In an effort to accommodate DEFENDANT'S attorney and DEFENDANT, the hearing was reset for June 7, 1990, at 9:00 a.m. in Miami.

At the hearing of June 7, 1990, the Court heard argument of counsel for the respective parties, and determined that DEFENDANT'S conduct was obstructive to PLAINTIFF'S rights to discover. In this respect the record is replete regarding DEFENDANT'S failure and refusal to produce documents, books and records of account, including but not limited to Apartment Magazine, Inc.'s Sun Bank/South Florida Account No. 067006076 check book, deposit tickets, monthly statements and cancelled checks for March and April 1989, in addition to 739 checks listed at "Checks Not Included And Missing" Trustee's Exhibit "F" appended to RENEWED EMERGENCY MOTION dated June 5, 1990; all accounts receivable and payable ledgers for

Apartment Magazine, Inc.; all bills of sale or other written evidence of personal or real property purchased or sold by Apartment Magazine, Inc.; United Pacific Single Premium Policy and Equitable Life Insurance Single Premium Policy with cash surrender values of $31,455.00 and $55,770.00, respectively; and, Lincoln Annuity in the sum of $57,668.00. DEFENDANT did produce a scintilla of documents at the hearing such as inconsequential equipment lease invoicing. He did not, however, produce any documents, books and records of account regarding the indebtedness in his favor from DEBTORS for an amount in excess of $250,000.00 consistent with his Rule 2004 Examination testimony of June 21, 1989, and January 16, 1990. DEFENDANT failed and refused to produce the Apartment Magazine, Inc. "corporate kit" and its contents consisting of corporate minutes, stock certificates and stock ledgers.

At his Rule 2004 Examination of May 17, 1990, DEFENDANT testified that previous counsel, Gary I. Handin, Weinstein, Zimmerman and Handin, P.A., was in possession of the "corporate kit" and would not release or otherwise relinquish the same due to DEFENDANT'S outstanding balance with that law firm. The Court considered DEFENDANT'S testimony and his attorney, Mr. Goldstein's, corroborative statements recorded in the transcript. Then the Court heard the live testimony of Mr. Handin, who swore that DEFENDANT'S and Mr. Goldstein's comments at the Rule 2004 Examination of May 17, 1990, were false and untrue. Moreover, Mr. Handin produced "Gary I. Handin Receipt" representing that DEFENDANT had received the Apartment Magazine, Inc. "corporate kit" on March 12, 1990, contrary to DEFENDANT'S denial. The receipt bears DEFENDANT'S signature. These references are but small examples of DEFENDANT'S obstructive behavior and in no way limit the extensive misconduct that has taken place in these proceedings.

At the conclusion of the June 7, 1990 hearing, this Court, in its continued attempt to afford leniency to DEFENDANT, ruled that he would have one last opportunity to produce all items requested and required by prior orders of Court, otherwise, this Court directed that DEFENDANT'S pleadings would be stricken and final default judgment would be entered in PLAINTIFF'S favor. Thereafter, on June 11, 1990, the Court entered its Order On Renewed Emergency Motion To Strike Defendant's Pleadings And For Entry Of Default And Final Default Judgment which comport to the ruling of June 7, 1990. The order in pertinent part provided:

"ORDERED AND ADJUDGED as follows:

1. The Renewed Emergency Motion To Strike Defendant's Pleadings And For Default And Final Default Judgment is denied without prejudice, and the Court reserves jurisdiction to rehear and reconsider the same on Monday, June 11, 1990, at 8:00 a.m., at Miami, Florida.

2. The Defendant Drucker is, once again, ordered to comply in every respect with this Court's prior orders, and to produce all documents, books and records of account as required in the Order Authorizing Rule 2004 Examination dated May 3, 1990, Order On Motion For Protective Order Nunc Pro Tunc dated May 22, 1990, and Order On Amended Emergency Motion To Strike Defendant's Pleadings And For Entry Of Default and Final Default Judgment, Emergency Motions For Contempt And Sanctions And Compelling Discovery, And Motion For Protective Order dated May 22, 1990, and Order On Amended Emergency Motion To Strike Defendant's Pleadings And For Entry Of Default and Final Default Judgment, Emergency Motions For Contempt And Sanctions And Compelling Discovery, And Motion For Protective Order dated May 29, 1990, at the law offices of Rotella & Boone, P.A., 500 E. Broward Boulevard, Fort Lauderdale, Florida, not later than 5:00 p.m., Friday June 8, 1990.

3. *In the event that Defendant Drucker fails to comply with the orders above-described as they relate to the production of discovery in the instant adversary proceeding, then his plead-*

*ings will be stricken and final default judgment will be entered in favor of the Plaintiff at 8:00 a.m., Monday, June 11, 1990."* (emphasis added).

Pursuant to this order, DEFENDANT appeared at PLAINTIFF'S counsel's office at 4:45 p.m. on Friday June 8, 1990. At that time, he provided limited documents and papers woefully insufficient to bring the required discovery into compliance with this Court's numerous orders. As a result, PLAINTIFF'S counsel prepared a detailed 14 page Affidavit Of Non–Compliance In Support Of Renewed Motion To Strike Defendant's Pleadings And For Default And Final Default Judgment. This document specifically set forth each and every aspect of this Court's orders with respect to discovery that DEFENDANT blatantly ignored, failed and refused to comply with, and further set forth relevant portions of DEFENDANT'S Rule 2004 Examination testimony of January 16, May 17, and 30, 1990, indicating his overall obstructiveness with respect to each of the Court's orders.

This Court was concerned with numerous portions of the record which indicated that both DEFENDANT and his counsel were less than truthful and forthright as to the location and existence of numerous documents. It appears from the Court's review of the filed Rule 2004 Examination transcripts, that perjurious testimony was given by DEFENDANT, and his counsel, which is but a minute example of the type of obstructiveness that has been ongoing throughout the course of these proceedings.

Based on the foregoing findings of fact, this Court finds that DEFENDANT, together with his counsel, have interfered in every respect with PLAINTIFF'S necessary discovery. They have acted with total disregard for the numerous orders of this Court requiring DEFENDANT'S compliance and cooperation. To require the PLAINTIFF to proceed to trial would result in a complete denial of due process and fairness and a miscarriage of justice. This Court has leaned over backwards to afford DEFENDANT numerous opportunities within which to bring his conduct into com-

pliance with this Court's numerous orders. While striking the pleadings and giving a judgment against DEFENDANT is a severe penalty, this Court, in its discretion, determines that such an action is warranted in this particular case. After carefully scrutinizing the Affidavit Of Non–Compliance In Support Of Renewed Motion To Strike Defendant's Pleadings And For Default And Final Default Judgment submitted by PLAINTIFF'S counsel, and allowing each attorney an opportunity to explain or otherwise respond to the contents thereof, the Court is satisfied that the documents, books and records of account requested by PLAINTIFF, and ordered to be produced by this Court, have not been presented in a manner which the discovery rules contemplate.

As to the allegations set forth in the PLAINTIFF'S Complaint To Avoid Preferential Transfer/Fraudulent Transfer And For Turnover, the Court finds, pursuant to the striking of the DEFENDANT'S pleadings and entry of default, and in conformity with the properly plead allegations of the aforementioned complaint, that within the year next prior to the filing of the previously referenced bankruptcy petitions, the DEBTORS made numerous preferential and fraudulent transfers, within the meaning of 11 U.S.C. Sections 547 and 548, to the DEFENDANT. These transfers included a series of checks totalling the sum of $46,436.00. In addition, the DEBTORS transferred to the DEFENDANT their 100% interest in the entity known as Apartment Journal Magazine, Inc., a/k/a Apartment Magazine, Inc., as partial consideration for a $250,000.00 outstanding debt that the DEBTORS owed to the DEFENDANT. The 100% interest in said entity included, but was not limited to, all common stock of said entity, 550 display racks, together with any and all other personalty, both tangible and intangible, together with all contract rights in which that entity asserted any right, title and/or interest of any nature whatsoever.

The Court further finds that the above described transfers were fraudulently made with actual intent to hinder, delay or defraud any entity to which the DEBTORS

were or became indebted, on or after the date that such transfers were made. This is evidenced by the DEBTORS complete failure to report any of said transfers in their bankruptcy schedules, which ultimately led to their denial of discharge in the underlying bankruptcy action.

Therefore, the Court hereby strikes all of the pleadings of the DEFENDANT and shall forthwith enter a separate final default judgment against him.

## CONCLUSIONS OF LAW

It is a well settled principal of law, and provided for both in the Federal Rules of Civil Procedure and the case law interpreting those rules, that when a party blatantly fails to comply with court orders with respect to discovery, it is proper for the court to strike that parties pleadings and enter a default final judgment against him. *In re Olson*, 105 B.R. 654 (Bankr.D.Kan.1989); *Matter of International Food Corporation of American*, 37 B.R. 22 (Bankr.M.D. Fla.1983); *Matter of Visioneering Construction*, 661 F.2d 119 (9th Cir.1981); FED.R.CIV.P. 37(b), (c). A review of this law clearly supports the position that in the case at bar, the PLAINTIFF is, as a matter of law, entitled to have DEFENDANT'S pleadings stricken and a final judgment by default entered against him.

Rule 37 of the Federal Rules of Civil Procedure provides, inter alia, that if a party fails to obey an order to provide or permit discovery, the court may enter an order striking out the pleadings and render a judgment by default against the disobedient party. The record in this case clearly supports the undeniable conclusion that the DEFENDANT failed to obey each and every one of this court's orders with respect to providing and permitting discovery. His continued failure to produce the requested documents is inexcusable. Courts construing Rule 37, in cases where factual scenarios similar to the case at bar existed, have routinely held that it is not an abuse of discretion, and is in fact proper, to strike the pleadings of a non-complying, disobedient party and enter a default judgment against him.

The United States Bankruptcy Court for the District of Kansas, recently entered a default judgment against debtors in an adversary proceeding for the debtors' dilatory tactics in delaying taking examinations, failing to provide information requested at examinations and failing to comply with the court's discovery orders. *See In re Olson*, 105 B.R. at 656. In *Olson*, the record indicated that the debtors, through the continued substitution of counsel, managed to constantly delay the taking of their Rule 2004 Examination in direct contradiction with the court's orders. When the debtors finally appeared for their scheduled examinations, they brought only some records and provided vague answers as to where the remaining records were located. After continued attempts by the debtors to further delay the prosecution of the adversary complaint, the creditor filed a Motion for Sanctions and Default Judgment based on the debtors' failure to comply with the previous discovery orders. *Id.* at 655. The *Olson* court found that the debtors had resisted discovery in the adversary proceeding with dilatory and evasive tactics and failed to provide any legitimate justification for doing so. *Id.* at 656. The court, in reaching its conclusion, found that the efforts of the creditor to obtain relief were consistently obstructed by the debtors. *Id.* at 658. Therefore, in light of the fact that the actions of the debtors were without justification, the court found that the bankruptcy court's sanction of striking the pleadings and granting a default judgment was not an abuse of discretion. *Id.*

The instant case presents a factual scenario very similar to the one in *Olson*. The record clearly indicates that the DEFENDANT has continually failed to comply with this Court's discovery orders. As in *Olson*, the answers given at the DEFENDANT'S 2004 Examination were extremely vague. The DEFENDANT provided no justification for failing to produce many of the documents that were, on several occasions, ordered to be produced by the Court. DEFENDANT'S inconsistent testimony, and continued failure to justify the lack of production, clearly exemplifies the type of

"dilatory and evasive tactics" that the *Olson* court identified as behavior that would support a court's striking of pleadings and the entering of a default judgment against a disobedient party.

For many years, bankruptcy courts have been following this same type of reasoning when striking pleadings and entering default judgments against such non-complying parties. In *Visioneering Construction*, 661 F.2d at 119, the United States Court of Appeals for the 9th Circuit, held that "... where the record was replete with instances of debtors' obstructionist and delaying tactics there was no abuse of discretion in the bankruptcy court striking the [debtors'] answer and deeming as admitted properly plead allegations of creditor's petition ..." *Id.* The facts in that case involved a litany of willful discovery abuses, including failure to attend a noticed deposition without first filing a protective order and failing to respond to document requests. Based on these failures, the petitioning creditors filed a motion to enter default judgment pursuant to the sanction provisions of FED.R.CIV.P. 37, and the bankruptcy court granted the motion. *Id.* at 121.

The *Visioneering* court's analysis in substantiating its decision focused on the debtors' deliberate and continued failure to cooperate with discovery requests and court orders. The *Visioneering* court held that the bankruptcy court "unequivocally had the power to apply FED.R.CIV.P. 37 sanctions for obstruction of discovery" *Id.* at 123. The court acknowledged the long standing principal of law that "[w]here ... counsel or a party has acted willfully or in bad faith in failing to comply with rules of discovery or with court orders enforcing the rules or in flagrant disregard of those rules or orders, it is within the discretion of the trial court to dismiss the action or to render judgment by default against the party responsible for non-compliance." *Id.* See also *National Hockey League vs. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976).

The *Visioneering* court found that because the record was replete with instances of the debtors' obstructionist and delaying tactics, there appeared to be the sufficient level of willful and bad faith non-compliance so as to support the bankruptcy court's ruling striking the pleadings and entering the default judgment. *Visioneering Construction*, 661 F.2d at 123. In the instant case, the DEFENDANT has continually failed to comply with this Court's orders regarding discovery. As the record indicates, the DEFENDANT has repeatedly attempted, and has been successful, at obstructing and delaying the discovery of PLAINTIFF and his counsel.

The DEFENDANT argued that the sanctions being sought were harsh and extreme and would deny him his day in court. While this is true, this Court realizes that his conduct can only be properly penalized by exercising its discretion and imposing these sanctions. In the case of *International Food Corporation of America*, 37 B.R. at 26, the United States Bankruptcy Court for the Middle District of Florida, when considering the harshness of the same remedies sought by the PLAINTIFF herein, found that while imposing such sanctions would result in substantial harm, the only one to suffer such harm would be the disobedient party, who was the very source of the violations of the rules of discovery and the orders of the court. *Id.* That court, thereupon, granted the motion for striking of the pleadings and entry of default judgment. *Id.* at 27.

This Court concurs with the reasoning of the *International Food Corporation* court in finding that the only party that would suffer harm from the imposition of this sanction would be the DEFENDANT, the very source of the violations of the rules of discovery and orders of this Court.

Based on the foregoing analysis of law, and the Findings Of Fact made by this court, it is clear that the PLAINTIFF, as a matter of law, is entitled to the relief requested in his Renewed Emergency Motion To Strike Defendant's Pleadings And For