**In re Rocco Dante DINUBILO, Debtor.**

**Bankruptcy No. 190–03254–A–7F.**

**No. MC MTH–2.**

United States Bankruptcy Court,
E.D. California.

Nov. 7, 1991.

Michael Terry Hertz, Lang, Richert & Patch, Fresno, Cal., for James M. Ford.

Mark St. Angelo, Edward R. Kandler, Gary W. Dyer, Regional Asst. U.S. Trustees, Sp. Asst. U.S. Attys., San Francisco, Cal., for Office of the U.S. Trustee.

John Logan, Director, Executive Office of the U.S. Trustee, Washington, D.C.

## OPINION

RICHARD T. FORD, Bankruptcy Judge.

## INTRODUCTION

James M. Ford, the Chapter 7 Trustee in this case (no relation to the undersigned), moves to dismiss the United States Trustee's Motion to remove him as the Chapter trustee. Alternatively, he seeks enforcement of the Court's Rule 2004 examination order and sanctions for the United States Trustee's failure to comply with that order. Lastly, Mr. Ford moves for disqualification of certain United States Trustee attorneys.

The United States Trustee's Office for the Fresno Division filed an opposition to the Trustee's Motion on July 23, 1991. They oppose all requests for relief by the Chapter trustee.

Having reviewed the evidence submitted herein, and being intimately familiar with these proceedings since their inception, the Court finds and holds that the United States Trustee's flagrant unprofessional and dilatory conduct warrants dismissal of the United States Trustee's Motion to remove James M. Ford as the Chapter trustee. Further, monetary sanctions in the amount of $3,871.05 are imposed against the United States Trustee's Office, as to the Department of Justice. Sanctions are also imposed individually against Mark St. Angelo, Regional Assistant U.S. Trustee and Special Assistant U.S. Attorney, in the amount of $800.

## FACTS

Debtor filed its Voluntary Petition under Chapter 7 of the Code on July 6, 1990. On July 17, 1990, James M. Ford was appointed Interim Trustee for the estate. That Order also provided that the amount of the bond was fixed and approved according to the blanket bond on file in the Clerk's Office. Ford has remained the Trustee in this case thereafter.

On January 22, 1991, the Court heard and approved the appointment of a Creditors' Committee in this case, authorizing them to bring any actions necessary to avoid any transfers avoidable by a Trustee. The Order reference this motion was filed February 21, 1991. The underlying Motion seeking such authority for the Unsecured Creditors' Committee represented to the Court that Ford, as the Trustee, refused to take action to recover certain transfers, alleging that the estate lacked the requisite funds and that he was unable to obtain counsel to represent him in connection with any lawsuit or adversary proceeding. This Court found it to be in the best interest of the estate to allow the Creditors' Committee to pursue such actions for the benefit of the estate.

Thereafter, on February 14, 1991, the United States Trustee's Office, Fresno Division, brought a Motion to remove Ford as the Chapter 7 Trustee (MC No. UST-1). Not only was Ford's removal sought in this case on the basis that he failed to investigate all allegations reference alleged fraudulent conveyances, the United States Trustee also sought his removal from all cases under 11 U.S.C. § 324(b) in which he was acting as trustee. That particular section states that when a trustee is removed under § 324(a) for cause, he is removed from "all other cases ... unless the Court orders otherwise." Specifically, the United States Trustee's Office sought Ford's removal in 19 other cases. It was alleged that the Trustee's attitude was one of stubborn noncooperation and that his consistent position was that if he was not compensated as defined by him, that he would refuse to administer the cases so assigned to him.

In order to prepare for his defense to the United States Trustee's Motion (MC No. UST-1), Ford's attorney, Mr. Hertz, caused a Notice of Deposition under Bankruptcy Rules 7030 and 9014 to be filed with this Court February 20, 1991, notifying the United States Trustee for District 17, Anthony G. Sousa, of the Trustee's intent to depose Edward R. Kandler and Gary W. Dyer. Evidently the examinations could not be worked out on a voluntary basis, and this Court issued subpoenas reference these witnesses on February 19, 1991.

Thereafter, on March 1, 1991, Ford's attorney filed a Motion for Order of Examination reference Edward R. Kandler and Gary W. Dyer. In the supporting declaration, Ford advanced the need to examine Kandler and Dyer to prepare his defense. It is further advanced that James Snyder of the United States Trustee's Office advised Mr. Hertz that the Notice of Deposition filed February 20, 1991, was ineffectual as there had been no response filed to the United States Trustee's Motion to remove the Chapter trustee and that this therefore was not a "contested matter" and no deposition could be set. The declaration further indicates attempts by Mr. Hertz to arrange mutually convenient times for these depositions; however, the United States Trustee's Office apparently refused Mr. Hertz's attempts.

A hearing on the Motion for Order of Examination was held on March 14, 1991. The United States Trustee's Office, by Assistant U.S. Trustee St. Angelo of the San Francisco Office, opposed the Trustee's request requiring Messrs. Dyer and Kandler to appear for examination. After a hearing on the matter, this Court granted the request for a 2004 examination. The Findings of Fact and Conclusions of Law and Order upon the motion for the order of examination were signed and filed by the Court on March 27, 1991.

Thereafter, on March 29, 1991, the United States Trustee's Office (San Francisco Office) filed an appeal from that order to the District Court, Eastern District of California, Fresno Division. On April 1, 1991, the United States Trustee's Office moved the Bankruptcy Court to stay the effect of its order allowing the 2004 examinations to go forward pending the appeal of this Court's order of March 27, 1991. The request for the stay pending appeal was denied by the Bankruptcy Court but subsequently granted on appeal by the District Court until the matter could be heard.

The District Court for the Eastern District of California, Judge Price presiding, heard the United States Trustee's appeal reference this Court's Order Denying Stay Pending Appeal. After hearing the matter, the District Court for the Eastern District of California, Fresno Division, Judge Price presiding, issued a Memorandum Decision on April 18, 1991, affirming this Court's decision not to issue a stay pending appeal. The Court found no basis to hold that the United States Trustee's Office was exempt from examination under Bankruptcy Rule 2004.

On April 29, 1991, this Court ordered Messrs. Kandler and Dyer to submit to a 2004 examination. The record reflects this examination occurred on May 15, 1991. The record further reflects that Mark St. Angelo of the United States Trustee's office lodged numerous objections. It is the Trustee's contention that because of the

numerous objections, the purpose of the 2004 exam was thwarted.

Thereafter, on July 1, 1991, Trustee Ford, through his attorneys, Lang, Richert & Patch, brought this Motion (MC No. MTH–2) to Dismiss the United States Trustee's Motion (MC UST–1) as a sanction for its failure to comply with the 2004 examination order; alternatively, this Motion sought enforcement of the Court's 2004 examination order with respect to the questions objected to by the United States Trustee's Office; the Motion also sought monetary sanctions for the failure to comply with that 2004 examination order; and lastly disqualification of all United States Trustee's Fresno Office attorneys and Mark St. Angelo from participating in the furtherance of the United States Trustee's Motion to Remove James M. Ford as Chapter trustee.

On July 23, 1991, the United States Trustee filed its opposition to Ford's Motion for Dismissal. While Mark St. Angelo has appeared and represented Messrs. Kandler and Dyer in all proceedings reference their 2004 examination, which incidentally conforms with Mr. Kandler's February 26, 1991, letter to Mr. Hertz attached as Exhibit "2" to Mr. Hertz's Declaration in Support of Motion to Shorten Time for Hearing and in Support of Motion to Require Witnesses to Appear and Testify (MC No. MTH–1), it is Mr. Dyer who apparently prepared and signed the opposition to the within motion as opposed to Mr. St. Angelo. Typically, it should be Mr. St. Angelo, as counsel, who prepares such an opposition in his representative capacity as opposed to Mr. Dyer, who stands in the shoes of a client in this matter. The basis of the opposition is that dismissal is unwarranted in that the questions posed by Mr. Hertz at the 2004 examination were beyond the scope of that examination. The United States Trustee also opposes the sanctions Mr. Hertz requests and the request for a disqualification of the United States Trustee's Fresno Office attorneys and Mark St. Angelo in pursuing their motion to remove Mr. Ford.

The hearing on this motion came on regularly July 23, 1991. The Court had previously reviewed Mr. Ford's motion, declarations in support of his motion, and points and authorities. The Court also had reviewed the opposition and points and authorities and declarations in support of the opposition submitted on behalf of the United States Trustee's Office. After hearing oral argument and taking the matter under submission, the Court now renders this decision.

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (O). This Opinion shall constitute this Court's Findings of Fact and Conclusions of Law.

## ANALYSIS

James M. Ford seeks imposition of very severe and harsh sanctions upon the United States Trustee's Office for its alleged obstructive conduct reference the court-ordered 2004 examinations. The basis of Mr. Ford's contentions are that by the United States Trustee's flagrant refusal to abide by the prior court order reference examination, at least in spirit, Mr. Ford is unable to adequately prepare a defense to the United States Trustee's motion for his removal. That motion is premised on the grounds that Mr. Ford has failed, and refuses, to perform those duties imposed on him under 11 U.S.C. § 704. Specifically, the United States Trustee's Office alleges Mr. Ford, in the Dinubilo case, has failed to comply with 11 U.S.C. § 704(1) and (4). Moreover, the United States Trustee's Office asserts that Mr. Ford should be removed from all cases as required under 11 U.S.C. § 324(b). They list a number of cases in which they allege Mr. Ford has similarly failed to perform his statutorily imposed duties.

The Court has reviewed the Rule 2004 transcripts furnished by Mr. Ford. There are many instances where the objections lodged by Mr. St. Angelo of the United States Trustee's Office to the questions posed by Mr. Hertz to Messrs. Kandler and Dyer were unwarranted, hostile, dilatory, and unprofessional.

For example, at pages 5 through 8 of Mr. Kandler's deposition, Mr. Hertz attempted

to elicit foundational facts reference Mr. Kandler's qualifications and background so as to gain insight into considerations underlying the motion to remove Mr. Ford as the Chapter trustee. He was met with nothing but relevancy and beyond the scope of examination objections. The record reflects at page 5 of Mr. Kandler's deposition transcript, at lines 7 through 26, and continuing through page 8, that after Mr. Kandler was asked his name and his occupation, he was met with a myriad of objections. (See Exhibit "1" attached hereto, consisting of pages 5 through 8 of Mr. Kandler's deposition testimony.)

Having reviewed the objections set forth by Mr. St. Angelo reference the foundational questions asked as attached in Exhibit "1" hereto, the Court would overrule each and every objection. Mr. Hertz has a justified right under the breadth of the 2004 examination to lay adequate foundation to show the competence of the witness to testify and to ascertain the basis of their motion to remove Mr. Ford.

The record also reflects that Mr. Hertz intended to question Messrs. Kandler and Dyer respecting their education, college, law school, employment, and legal experience of any kind. At pages 8 through 13 of Mr. Kandler's 2004 examination transcript and pages 5 and 6 of Mr. Dyer's 2004 examination transcript, Mr. St. Angelo made relevancy and beyond the scope of the examination objections to each and every question reference Messrs. Kandler and Dyer's educational background. The Court concludes that Mr. St. Angelo's conduct was calculated and designed to circumvent even the most basic of questions posed by Mr. Ford's counsel at the 2004 examination. Mr. Hertz is correct in indicating at page 8 of Mr. Kandler's transcript, lines 10 through 20, that a 2004 examination is a fishing expedition. Virtually any question can be posed providing it has some impact upon the administration of the bankruptcy estate. It can be very slight, as Mr. Hertz points out. In this instance, Mr. Kandler's qualifications may have some impact in that they may influence his decision in the removal action of James M. Ford as trustee for the estate as they may potentially reveal insight into his expectations of Mr. Ford as a trustee. Therefore, it may have an impact upon the administration of the estate within the contemplation of Rule 2004(b) wherein it states "or to any matter which may affect the administration of the debtor's estate ..."

At page 53 of Mr. Kandler's examination transcript, Trustee's counsel sought to inquire as to the United States Trustee's first contact with Mr. Ford as a trustee or examiner in any case. Objections were again lodged by Mr. St. Angelo, asserting that such questioning was beyond the scope of examination. More particularly, Mr. St. Angelo, at page 53, line 26, and page 54, lines 1 through 3, stated "beyond the scope. It's got nothing to do with Mr. Ford's administration of the estate of Mr. Dinubilo. That's got nothing to do with this motion."

This Court could not more wholeheartedly disagree with Mr. St. Angelo's objection. Such an objection would have to be overruled. As a second basis of the United States Trustee's Motion, the trustee has alleged that Mr. Ford has failed to perform those duties with respect to 19 other cases. It is asserted that under 11 U.S.C. § 324(b), where a trustee is removed under § 324(a) for cause, that he should be removed from all other cases. In the 19 other cases referenced by the United States Trustee's Office in their moving papers, they assert other acts of misconduct by Mr. Ford. The Court believes that as these cases and alleged acts of incompetence have been referenced by the United States Trustee's Office, that such a line of questioning by Mr. Hertz is neither beyond the scope of the 2004 examination nor irrelevant.

Similarly, questioning occurred at page 129 of Mr. Kandler's examination transcript as to whether removal of a trustee would be warranted if that trustee were underbonded. The course of questioning went as follows:

"Q. Is underbonding a ground for removing a trustee?

A. Are you asking a legal question?

**506**

Q. I am asking whether if somebody was underbonded, you would move for their removal as trustee or even recommend it.

Mr. St. Angelo: Well, again, first of all, it's a hypothetical that is clearly missing an awful lot to it.

Mr. Hertz: No, it isn't, Mr. St. Angelo. Let me point out why.

Mr. St. Angelo: Besides which, it goes to the deliberative process by which the decisions are made in the U.S. Trustee's Office as to when to file motions under what circumstances. And you know, that is something that as to when he's not going to answer.

Q. Is a trustee in violation of your regulation if he underbonds?

Mr. St. Angelo: He's in violation of the law.

Mr. Hertz: I'm asking Mr. Kandler.

Q. Mr. Kandler, is he in violation of your regulation if he's underbonded?

Mr. St. Angelo: It's irrelevant here.

Mr. Hertz: No it isn't. Because you charge him with doing it. It's hardly irrelevant."

The questioning continued. At page 131 of the deposition transcript, Mr. St. Angelo objected on grounds that the questioning was beyond the scope of Mr. Kandler's authority to testify.

This Court views that testimony and the confrontational stance taken by Mr. St. Angelo as completely unprofessional under the circumstances and certainly not beyond the scope. Mr. Hertz posed a simple question that called for a simple response from Mr. Kandler as to whether or not underbonding would be a basis for the United States Trustee's Office to take action to remove a trustee. This is an action to remove Mr. Ford, and as the United States Trustee's Office put this issue in contention in this motion, it certainly is not beyond the scope of this examination.

Questions were also asked reference the American Box case, in which the United States Trustee sought Mr. Ford's removal under 11 U.S.C. § 324(b). This case, too, was referenced in the United States Trustee's motion. Mr. St. Angelo's objection to

the questions posed reference American Box were that they were beyond the scope of the 2004 examination. In addition, he objected on grounds of relevance and that facts were assumed which were not in evidence. As the United States Trustee put American Box in issue by virtue of its motion, these questions certainly were not beyond the scope, and they do have relevancy to these proceedings.

Mr. Ford also argues in his motion that Mr. Dyer used his position of confidence as an attorney offering legal advice, at the direction of his supervisors, to gain information about various other cases in which Mr. Ford was acting as trustee. Mr. Hertz sought to elicit testimony as to program regulations or policies reference bonding requirements and various cases .in which Mr. Ford served as trustee. The recurrent objections by Mr. St. Angelo were that these questions were beyond the scope of the 2004 examination and irrelevant.

### CONCLUSIONS OF LAW

 The Court is of the firm conviction that sanctions are warranted for the United States Trustee's egregious conduct at the 2004 examinations. Bankruptcy Rule 9014 governing contested matters succinctly states that Rule 7037 has application. Case law similarly supports imposition of sanctions under Rule 7037 for disobedience of an order requiring a Rule 2004 examination. See *In re Sofro,* 117 B.R. 745 (Bankr.S.D.Fla.1990); *In re Alderson,* 114 B.R. 672 (Bankr.D.S.D.1990); *In re Olson,* 105 B.R. 654 (D.Kan.1989).

 In determining the type of sanction to be imposed, the trial court has considerable discretion. Bankruptcy Rule 7037(b)(2); see also *United States v. Sumitomo Marine & Fire Insurance Company,* 617 F.2d 1365, 1369 (9th Cir.1980). Sanctions are to be imposed for a number of reasons and must be weighed in light of the full record in the case. *Cine Forty–Second St. Theatre v. Allied Artists,* 602 F.2d 1062, 1066–1068 (2nd Cir.1979); *accord* in *United States v. Sumitomo Marine & Fire Insurance Company, supra,* 617 F.2d at 1369.

■ One purpose for imposition of sanctions is to insure that a party, and in this instance the United States Trustee's Office, will not be able to profit from its failure to comply with this Court's and the District Court's orders requiring submission to the 2004 examination.

A second purpose for imposition of sanctions is to secure compliance with the particular order at hand. The record amply demonstrates that the United States Trustee's Office still rigidly believes it need not submit to a 2004 examination. When posed with the most simple of foundational questions which would inevitably lead to matters discoverable under the scope of 2004, Mr. St. Angelo lodged repeated objections, thereby purposefully frustrating the 2004 examination process. This course of conduct completely disregards the orders of both this Court and the District Court requiring their submission to that examination.

Thirdly, and most importantly in this case, is the deterrent effect a sanction will have with respect to other cases. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). While the Court would not want to preclude the United States Trustee or others from bringing future § 324 actions as to Mr. Ford should cause exist, the Court is compelled to ensure that neither the United States Trustee's Office nor any other party will perform in a manner as the United States Trustee's Office has performed in this case. Accordingly, the sanctions imposed must have a general deterrent effect with respect to the United States Trustee's Office, not only in cases involving Ford as trustee, but in all cases pending or hereafter filed in this Court.

The Court is also keenly aware that the disobedient party in this action is a government agency. The United States Trustee's flagrant disobedience and callous disregard of the Court discovery orders is quite disconcerting. Mr. St. Angelo's frivolous objections that precluded Mr. Hertz from laying certain foundational requirements to proceed on to matters which would effect the administration of this estate is, in this Court's opinion, totally unprofessional. As set forth in *United States v. National Medical Enterprises, Inc.*, 792 F.2d 906, 910 (9th Cir.1986), a case which originated from Judge Coyle's Court in the Eastern District of California, Fresno Division, here too there has been a violation of the spirit and intention of the 2004 examination order in an attempt to influence the outcome of this contested matter. As Chief Circuit Judge Wallace quoted in his concurring opinion in *Potlatch Corp. v. United States*, 679 F.2d 153, 158 (9th Cir.1982), "the effectiveness of and need for harsh measures is particularly evident when the disobedient party is the government. 'The public interest requires not only that court orders be obeyed but further that governmental agencies which are charged with the enforcement of laws [as are the United States Trustees herein] should set the example of compliance with court orders.'" Citing *United States v. Sumitomo Marine & Fire Insurance Company*, 617 F.2d 1365, 1370 (9th Cir.1980) quoting *Perry v. Golub*, 74 F.R.D. 360, 366 (N.D.Ala.1976).

■ This case is clearly not one in which bureaucratic delay excuses the United States Trustee's actions. Rather, this is a case where the United States Trustee's actions are purposefully designed to obstruct the examination process ordered not only by this Court but by the District Court as well. Their obstructive conduct is consistent with their track record in this case, that being continued resistance to the 2004 examination process. As the United States Trustee's Office is constantly in the public eye in the bankruptcy arena, a harsher sanction is warranted by virtue of the fact that this is a governmental agency acting in flagrant disobedience and disregard of the Bankruptcy Court's and District Court's orders requiring their submission to the 2004 examination. *United States v. Sumitomo Marine & Fire Insurance Co., supra*, 617 F.2d at 1370, citing *National Hockey League v. Metropolitan Hockey Club, Inc., supra*, 427 U.S. at 643, 96 S.Ct.

at 2781. Only a severe sanction in this instance will further the purpose of Bankruptcy Rule 7037(b).

## FACTORS TO BE WEIGHED IN DETERMINING SANCTIONS

■ In determining the appropriate sanction, several factors must be considered. This Court has gleaned the following factors from case law.

1. The diligence of the party against whom the motion is made;

2. The impact on the estate and the prejudice to the opposing party suffering the delay;

3. The notice and warning to the party that is to be sanctioned;

4. The effectiveness, availability, and effect of lesser alternative sanctions;

5. The severity of the sanctions imposed;

6. Is there a history of dilatory conduct demonstrating bad faith?

7. The public interest;

8. This Court's need to manage its docket; and

9. The sanction must specifically relate to the particular claim at issue in the order.

*In re Rubin,* 769 F.2d 611, 616 (9th Cir. 1985); *Hamilton v. Neptune Orient Lines, Ltd.,* 811 F.2d 498, 499 (9th Cir.1987); *In re Tong Seae (U.S.A.), Inc.,* 81 B.R. 593, 597–598 (9th Cir. BAP 1987); *In re Paolino,* 87 B.R. 366, 368 (Bankr.E.D.Pa.1988);

■ While harsh and severe sanctions are inappropriate in the absence of willfulness, bad faith, or fault, it certainly stands to reason that where willful disregard for court orders and bad faith exists as in the instant case, fairness demands the imposition of severe sanctions. *Fjeldstad v. American Honda Motor Company,* 762 F.2d 1334, 1340 (9th Cir.1985) (emphasis added) citing *Munoz–Santana v. I.N.S.,* 742 F.2d 561, 564 (9th Cir.1984).

### A. Notice and Warning

Notice and warning in this case is amply apparent. Discovery was commenced by counsel for Mr. Ford attempting to obtain discovery under Rule 7037. Mr. Hertz thereafter complied with the United States Trustee's demands that they disclose subject matter sought to be inquired into under the deposition. After complying with that request, the United States Trustee outright rejected discovery.

Thereafter, a motion to compel discovery was brought by Mr. Hertz in this Court. The Court ordered Messrs. Kandler and Dyer to appear for a 2004 examination. The United States Trustee's Office thereafter applied for a stay pending appeal, which was denied in this Court and subsequently granted by the District Court. Upon hearing the appeal of this Court's Order Denying Stay Pending Appeal in the District Court, the District Court concurred with this Court's prior order and ordered Messrs. Kandler and Dyer to appear for the 2004 examination and answer all proper questions.

In flagrant disregard of those orders and the spirit of those orders, the United States Trustee has now, as evidenced by the deposition transcripts, continued in its course of conduct by lodging so many unwarranted objections so as to make the 2004 examination ineffectual for the preparation of Mr. Ford's defense and also a waste of Mr. Hertz's preparation time and time in conducting the 2004 examination. Therefore, this Court is satisfied that the United States Trustee had ample notice and warning of this Court's and the District Court's positions reference discovery.

### B. Continuing Dilatory Conduct Designed to Frustrate Proceedings

As in *In re Paolino, supra,* 87 B.R. 366, this case is plagued with the United States Trustee's consistent refusal to comply with discovery requests. As described above, the United States Trustee's course of conduct has been to flagrantly disregard and disobey Court orders requiring submission to the 2004 examination process. It is clear that their compliance is not a realistic expectation in this case. Accordingly, strong measures are in order to meet the objectives set forth under Rule 7037. *Matter of Visioneering Construction,* 661

F.2d 119, 123 (9th Cir.1981) citing *G–K Properties v. Redevelopment Agency of San Jose*, 577 F.2d 645, 647 (9th Cir.1978); accord *National Hockey League v. Metropolitan Hockey Club, Inc., supra*, 427 U.S. at 642, 96 S.Ct. at 2780; *Societe Internationale v. Rogers, supra*, 357 U.S. at 208, 78 S.Ct. at 1094; see also *In re Rubin, supra*, 769 F.2d at 616–617.

### C. The Prejudice to Mr. Ford and the Impact Upon the Estate

Mr. Ford is certainly prejudiced by the United States Trustee's conduct. Without being able to conduct a meaningful 2004 examination of the United States Trustee's attorneys, Mr. Ford is unable to prepare his opposition and effectively defend the removal motion. Moreover, the current action, as correctly pointed out by Mr. Hertz, causes Mr. Ford to administer not only this case but all cases he is administering, both in the bankruptcy court and in the state court, under a cloud of unprofessionalism and incompetence. He should not be required to operate under such a cloud unless the allegations are proven through a fair hearing on the merits.

### D. The Public Interest

Perhaps the most compelling reason in this case warranting harsh sanctions is that "the public interest requires not only that court orders be obeyed but further that governmental agencies which are charged with the enforcement of laws should set the example of compliance with court orders." *United States v. Sumitomo Marine & Fire Insurance Company*, 617 F.2d 1365, 1370 (9th Cir.1980) citing *Perry v. Golub*, 74 F.R.D. 360, 366 (N.D.Ala.1976). Quite clearly, the public must know that when a court enters orders requiring submission to discovery procedures, they are to be obeyed. Should harsh measures not be taken in this action, especially as the disobedient party is the United States Trustee's Office, this might foster sentiment amongst other litigants in this court that they are free or at least freer to disregard discovery orders of this court and that they are somehow above the law. Harsh measures are warranted to prevent the fostering of such sentiments. *National Hockey League v. Metropolitan Hockey Club, Inc., supra*, 427 U.S. at 643, 96 S.Ct. at 2781; *G–K Properties v. Redevelopment Agency, supra*, 577 F.2d at 647–648.

### E. The Effectiveness and Availability of Lesser Alternative Sanctions

The record clearly reflects that lesser alternative sanctions in the form of monetary penalties coupled with orders to comply would not realistically compel compliance with the 2004 examination orders. Both this Court and the District Court ordered submission to the 2004 examination, and those orders have repeatedly been disregarded, in substance, by the United States Trustee's Office. As discussed under Subdivision F below, the imposition of lesser sanctions would inevitably result in further motions to compel, appeals, motions for stay pending appeal, and further disobedience. It would be a futile attempt to insure discovery compliance by issuing monetary sanctions and orders to comply against the United States Trustee's Office. With the exception of issuing monetary sanctions, both this Court and the District Court have already ordered compliance with the discovery requests, which have been disobeyed. As familiar as this Court is with this proceeding, and knowing the hostile posture in which this proceeding exists, lesser alternative sanctions are unrealistic to ensure compliance. This leaves no alternative to the issuance of harsh sanctions, particularly because the party involved is a governmental agency. Hence, dismissal in this instance is appropriate. *Malone v. U.S. Postal Service*, 833 F.2d 128, 131–133 (9th Cir.1987) cert. denied *Malone v. Franks*, 488 U.S. 819, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988); *North American Watch Corporation v. Princess Ermine Jewels*, 786 F.2d 1447, 1450–1451 (9th Cir. 1986); *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir.1983) holding dismissal as an appropriate sanction where, *as herein* the failure to comply with discovery orders is due to willfulness, bad faith, or fault of the parties; *United Artists Corp. v. La Cage Aux Folles, Inc.*, 771

**510**

F.2d 1265, 1270–1271 (9th Cir.1985) holding dismissal is warranted where trial court considers lesser alternative sanctions to be inadequate.

### F. Docket Management

The facts in this case clearly indicate that should an order compelling responses to questions be entered, that further objections would be lodged by the United States Trustee's Office. Subsequent to that, it is highly probable, as has already occurred, the United States Trustee's Office would appeal the judgment of the Court. The Court believes that in the interest of judicial economy there should be an end to such frivolous tactics as have been employed by the United States Trustee's Office in this case. Moreover, it is probable that a motion to remove might be brought in one of the 19 other cases referenced in the present removal motion. Neither this Court, nor the District Court, should have to endlessly endure such motions, requests for stays pending appeal, appeals, and subsequent disregard of orders. Therefore, this factor also militates against the United States Trustee's Office.

### G. The Severity of the Sanction and the Relation of that Sanction to the Particular Claim and Issue in this Case

The record clearly reflects that the United States Trustee has and will refuse to answer questions not specifically bearing on the administration of the Dinubilo estate. However, the Court notes that the issue herein addresses Mr. Ford's competency as a Chapter trustee. Other cases in which the United States Trustee's Office attack Mr. Ford's credibility have been brought into issue by them. The 2004 examination transcript clearly represents that Mr. St. Angelo will not permit any foundational facts to be established other than relating to the Dinubilo matter, and that he will not allow questions involving any other cases to be answered by Messrs. Kandler and Dyer. This course of conduct prevents Mr. Ford from establishing his defense to Trustee's motion. Based upon the United States Trustee's lack of cooperativeness and the continuing pattern thereof, dismis-

sal is warranted in that an order compelling responses or monetary sanctions only will likely be ineffective. Dismissal is the only alternative that is related to the Trustee's ability to examine and rebut the evidence offered in support of the United States Trustee's motion.

Considering the foregoing factors, the parties involved in the instant proceeding, the past track record evidenced by the United States Trustee's Office in this case, and their flagrant disregard for the orders of this Court and the District Court, this Court finds and holds that dismissal of the United States Trustee's motion is warranted. Rule 7037(b)(2)(C).

■ Additionally, sanctions for the unnecessary expenses incurred by Mr. Ford in the defense of this contested matter are warranted. Fees to date reference preparing and participating in the 2004 examination and preparation of the instant motion are $5,864. The amount of $2,311 was incurred in preparing for and participating in the 2004 examination. Costs have been incurred in the amount of $67. Additionally, the cost of the transcript is $1,051.05. Having reviewed Mr. Hertz's declaration in support of the total expenses incurred to date, that sum being $6,982.05, the Court is inclined to grant monetary sanctions in the total amount of $4,671.05 for fees and costs. While Rule 37(f) formerly precluded awards against the government until its repeal in 1980 (repealed Pub.L. 96–481, Title II, § 205(a), Oct. 21, 1980, 94 Stat. 2330), sanctions in this instance are entirely appropriate as bureaucratic delay is non-existent and nothing else excuses the United States Trustee's flagrant and dilatory conduct in this case. *Potlatch Corp. v. United States, supra,* 679 F.2d 153, 158, concurring opinion by Circuit Judge Wallace. Accordingly, because of Mr. St. Angelo's obstreperous conduct, he is individually sanctioned in the amount of $800, and the United States Trustee, through the Department of Justice, shall pay $3,871.05. These sums are due and payable to Mr. Ford's attorneys, Lang, Richert & Patch, within thirty days of the date of entry of this judgment.

No sanctions are imposed against either Mr. Kandler or Mr. Dyer, as there is no evidence before the Court indicating that the United States Trustee's course of conduct was pursued at their direction.

The Court also takes this opportunity to affirmatively state that it holds Mr. Dyer and Mr. Snyder of the United States Trustee's Office in the highest of regard. These two attorneys are always prepared when appearing in this Court, have conducted themselves at all times in professional and ethical manners, and consistently seem genuinely concerned to execute the functions required of them as staff attorneys for the United States Trustee's Office.

## CONCLUSION

Based upon the record in this case, this Court finds and holds that dismissal of the United States Trustee's motion to remove James M. Ford as trustee from this case is the only sanction that will effectuate the underlying policies behind Rule 7037. Mr. St. Angelo has demonstrated a willingness to disregard court orders and has set out, even after orders have been issued, on a mission to circumvent the effect. Therefore, he shall be individually sanctioned in the amount of $800 in the hopes that this sanction will prevent future conduct of this sort. Sanctions in the amount of $3,871.05 against the United States Trustee's Office, through the Department of Justice, are also warranted in this action. These sanctions shall be paid to Lang, Richert & Patch within thirty days from the date of entry of judgment as reasonable fees and costs incurred in the preparation and defense of these motions.

## EXHIBIT 1

A. My name is Edward Kandler.

Q. And will you please state your occupation?

A. I am the Assistant United States Trustee for the Fresno Division of the Eastern District of California, Region 17, United States Department of Justice.

Q. Okay. And have you ever had your deposition taken?

MR. ST. ANGELO: Counsel, first, this is not a deposition, it's a Rule 2004 Examination.

MR. HERTZ: Okay.

MR. ST. ANGELO: And whether he's ever had his deposition taken is totally irrelevant to anything affecting the administration of this estate. And to that extent I'm going to advise him not to answer. Rule 2004 is quite limited in its scope as to the types of questions you may ask.

MR. HERTZ: All right. Let me rephrase the question.

Q. Have you ever testified anywhere, Mr. Kandler?

MR. ST. ANGELO: Again, there's no relevance to this 2004 Examination as to whether he's ever testified in any way.

MR. HERTZ: It does because it goes to his credibility.

MR. ST. ANGELO: Counsel, his credibility is not an issue in this 2004 Examination. The purpose of the examination is set forth very clearly in the Rule. If you wish to address this to the court, you may do so.

MR. HERTZ: Okay. You made your point.

Q. Are you on any kind of medication at the present time, Mr. Kandler?

And that is a relevant question.

A. No.

Q. Thank you.

Do you understand that when a question is asked of you, you have to answer clearly "yes" or "no"?

A. Yes.

Q. You make any explanation you wish after that?

A. I understand.

Q. Thank you.

What's your date of birth?

MR. ST. ANGELO: Again, that's not relevant to anything here. I will go ahead and let him answer, but let's stick to what's under Rule 2004, please.

THE WITNESS: September 18, 1949.

MR. HERTZ: Q. September 18th, 1949. Okay.

And your education, sir?

**512**

MR. ST. ANGELO: Again, that's not relevant at all to this Rule 2004 Examination. Has nothing to do with the administration of this estate, Counsel.

MR. HERTZ: He's a witness, and I have to know who he is.

MR. ST. ANGELO: You know who he is. He's the region—he's the Assistant United States Trustee in charge of the office here in Fresno. That's all you need to know.

MR. HERTZ: Okay. I have a lot of questions to ask him about things which he's written. And in order to judge what he has said—

MR. ST. ANGELO: Counsel—

MR. HERTZ: —the veracity and his abilities, I have to know.

MR. ST. ANGELO: The judgment of veracity and his abilities is irrelevant, and it's got nothing to do with the subject of this underlying action.

MR. HERTZ: I'll ask all the questions I'm going to ask and you'll make all your objections, and we'll take it to the judge.

MR. ST. ANGELO: That's correct.

MR. HERTZ: Okay.

Q. All right. Are you—is basically your objection is that I can't ask it because it doesn't fall within the scope of Rule 2004 and is that it?

MR. ST. ANGELO: That is correct. In this particular instance I'm not going to make that statement as to every question you may ask, I don't know what questions you're going to ask.

MR. HERTZ: I'm going to ask him about his education, his school background, his employment, what he does in his normal job, all the normal questions you would ask of anybody. Do you feel that all of those are irrelevant?

MR. ST. ANGELO: First of all, those aren't all the normal questions you would ask under Rule 2004 Examination or a in a deposition. One only asks him when they're relevant to the particular subject matter.

MR. HERTZ: Well, all right. The Rule 2004 Examination is a fishing expedition. You can ask virtually anything you want as long as it has some impact upon the administration. It can be very slight. The qualifications of a witness is certainly—has an impact upon the administration. It has an impact upon what questions you ask him, about what you're trying to find out. You have to know what the person is and who they are, and their perceptions, their abilities to understand and so on. To do that, you have to know about their education.

MR. ST. ANGELO: Counsel, nowhere in this case has there ever been any indication that Mr. Kander has ever had anything to do with the administration of this particular estate, in re Rocco Dinublio. Under those circumstances, you know, your speech notwithstanding, frankly, I disagree.