**In re Rocco Dante DINUBILO, Debtor.**

**Civ. A. No. CV–F–92–5011 OWW.**

United States District Court,
E.D. California.

May 10, 1993.

Michael Terry Hertz, Lang Richert and Patch, Fresno, CA.

Paul Michael Brown, Torts Branch, Civ. Div., Washington, DC.

Daniel Bensing, U.S. Attorney's Office, Fresno, CA.

## MEMORANDUM OPINION AND ORDER RE APPELLANTS' APPEAL FROM UNITED STATES BANKRUPTCY COURT, EASTERN DISTRICT OF CALIFORNIA

WANGER, District Judge.

### I

### INTRODUCTION

This is an appeal from a Bankruptcy Court's decision resolving a discovery dispute between appellants, Mark St. Angelo [1] in his personal capacity and the Office of the United States Trustee ("OUST"), and appellee, James M. Ford, ("Case Trustee"), the trustee appointed for the estate of debtor, Rocco Dante Dinubilo. The discovery dispute in turn, arose out of OUST's motion to remove the Case Trustee in debtor Dinubilo's Chapter 7 bankruptcy. Appellants appeal the Bankruptcy Court's decision to dismiss OUST's motion to remove the Case Trustee and the imposition of monetary sanctions against OUST and appellant St. Angelo individually.

### II

### STATEMENT OF FACTS

On July 6, 1990, debtor Dinubilo, filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. Shortly thereafter, the Case Trustee was appointed trustee of the estate. Debtor's two largest

---

1. Appellant, Mark St. Angelo, was the Regional Assistant United States Trustee when this appeal was taken. Upon resignation of the United States Trustee, he became Acting United States Trustee. One of the Trustee's duties is to monitor the activities of the panel of trustees that it has established in cases in which a trustee has been appointed by the United States Trustee's Office.

creditors, Harvey's Wagon Wheel, Inc. and Harrah's Club ("creditors"), two Nevada gambling entities, asserted that debtor and his wife had transferred real and personal property to their son within three years of the date of debtor's bankruptcy filing. The creditors requested that the Case Trustee seek to avoid and recover the amounts transferred pursuant to the Case Trustee's avoidance powers, 11 U.S.C. §§ 544, 545, 547 and/or 548.

The Case Trustee declined to initiate any adversary proceedings against the debtor or the debtor's transferees for the reasons that he was not an attorney and lacked liquid assets to fund an investigation or to cover the expense of litigation. As a result, the creditors sought formation of a creditors' committee to bring adversary proceedings to avoid the transfers. The Case Trustee did not oppose the creditors' motion and the Bankruptcy Judge authorized the formation of the committee to institute any actions necessary to avoid the transfers.

On February 14, 1991, OUST filed a motion to remove the Case Trustee under 11 U.S.C. § 324(a)[2] for alleged nonperformance of his duties by failure to expeditiously pursue the debtor's improper transfers of real property; failure to investigate the presence of equity in real property; and failure to collect and reduce to money the assets of the estate in a timely fashion. In the same motion, OUST requested that the Case Trustee be removed from all of his cases pursuant to 11 U.S.C. § 324(b).[3]

The Case Trustee alleges that Edward Kandler, the Assistant U.S. Trustee who sought his removal, is engaged in a "personal vendetta" against him.[4] The Case Trustee sought to depose Edward Kandler and Gary Dyer, a staff attorney with OUST, in an effort to show that OUST's motion to remove is "unsound and unfounded." St. Angelo notified the Case Trustee that, according to Department of Justice regulations, Kandler and Dyer could not be deposed unless the Case Trustee provided a written description of the subject areas to be covered in the deposition. On February 27, 1991, the Case Trustee telecopied St. Angelo a letter which listed the matters to be covered in the deposition.[5] Upon learning the nature of the information sought by the Case Trustee, St. Angelo notified the Case Trustee that the Department of Justice would not permit Kandler and Dyer to be deposed concerning such matters without a court order.

On March 13, 1991, the Case Trustee moved for an order against Kandler and Dyer, directing them to appear for an examination pursuant to Bankruptcy Rule 2004.[6]

---

2. This section of the Bankruptcy Code permits a court, after notice and a hearing, to remove a trustee or an examiner, for cause.

3. Under 11 U.S.C. § 324(b), when a trustee is removed under § 324(a) for cause, she is removed from "all other cases ... unless the court orders otherwise."

4. The Case Trustee makes reference to *In re San Joaquin Roast Beef*, Case No. 187–02682–B–7F, in which Edward Kandler unsuccessfully sought to remove the Case Trustee. In that case, Bankruptcy Judge Brett Dorian denied OUST's motion for removal without comment and the Case Trustee remained as trustee for the estate.

　Reference has been made to *In re American Box Corporation*, CV–F–92–5846 REC. That case is not helpful to resolution of the issues raised by this appeal.

5. Exhibit # 4 to the Declaration of Michael Terry Hertz, counsel for the Case Trustee, in Support of Motion to Require Witnesses to Appear and Testify. The letter, addressed to St. Angelo, outlined the areas of questioning as follows: Kandler and Dyer's educational and professional background; their personal and professional relationship with the Case Trustee and other persons associated with the *Dinubilo* case and the U.S. Trustee's Office; hierarchy of decision-making within the U.S. Trustee program, locally and nationally; the basis upon which the motions against the Case Trustee were recommended; Kandler and Dyer's familiarity with the matters set forth in the *Dinubilo* and *San Joaquin Roast Beef* cases; and their familiarity with other cases handled by the Case Trustee.

6. Under Rule 2004, a court may order the examination of any person on motion of any party in interest. The examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Bankr.R. 2004.

OUST opposed the Case Trustee's motion for a Rule 2004 examination on several grounds. Most notably, OUST argued that a Rule 2004 examination is limited to uncovering information on the existence and whereabouts of a debtor's estate and could not be used to probe the internal operations of the U.S. Trustee's office. OUST also argued that the Case Trustee was required to proceed under Bankruptcy Rule 9014, which makes the Federal Rules of Civil Procedure applicable to contested matters. In the alternative, OUST urged the court to find that the information sought by the Case Trustee was protected by the attorney-client privilege, the work product privilege, and/or the Privacy Act, 5 U.S.C. § 552a.

On March 27, 1991, Bankruptcy Judge Richard T. Ford entered an order, along with findings of fact and conclusions of law, requiring the OUST attorneys to submit to the Rule 2004 examination. The Bankruptcy Court found that Rule 2004(a): (1) permits the Court to order the examination of any entity upon the motion of any party in interest; (2) that the Case Trustee was a party in interest; (3) Kandler and Dyer were "entities" under Rule 9001 and 11 U.S.C. § 101(14). Under Rule 2004(b): (4) the examination may relate to any matter which may affect the administration of the debtor's estate; and (5) "the removal of a trustee is without question a matter which affects the administration of the debtor's estate."

As to OUST's alternative argument that the deposition sought privileged or work product information, the Bankruptcy Court found that all of the matters to be explored did not appear to be covered under the various privileges asserted. The Court stated that "claims of privilege, privilege or work product needed to be made on [sic] question-by-question basis and can only be determined after questions are asked and a response is refused on specific grounds."

OUST appealed to the District Court and moved for a stay of the order pending appeal.

The Bankruptcy Court denied the stay and the matter came before Judge Price on the issue of appellants' motion for stay pending appeal. Judge Price denied the stay and reached the merits. He found no basis for the U.S. Trustee or any OUST employees to be exempt from examination under Rule 2004. He affirmed the Bankruptcy Court's order for the examination without the matter being briefed or argued on the merits, on the premise that appellants' discovery concerns were adequately addressed by permitting St. Angelo to state objections during the examination.

On April 29, 1991, the Bankruptcy Court reset the date of the Rule 2004 examination. On May 15, 1991, attorneys Kandler and Dyer, represented by appellant St. Angelo, appeared for the examination conducted by the Case Trustee's counsel. During the examination, St. Angelo made numerous objections on the grounds of "relevance" and "beyond the scope of Rule 2004," claiming that a Rule 2004 examination is for the limited purpose of gathering information on the financial affairs of the debtor.

On July 1, 1991, following the Rule 2004 examination, the Case Trustee brought a motion for the imposition of discovery sanctions under Bankruptcy Rule 7037, which incorporates Fed.R.Civ.P. 37. The Case Trustee sought: 1) dismissal of OUST's motion for removal as a sanction for the failure to comply with the 2004 examination order or alternatively; 2) a further order requiring Kandler and Dyer to answer the questions posed during the 2004 examination which are not protected by any privilege; or 3) disqualification of all OUST/Fresno attorneys and St. Angelo from participating in the motion to remove the Case Trustee; and 4) attorneys' fees and costs.

It is the November 7, 1991, Bankruptcy Court ruling on the Case Trustee's sanctions motion, from which this appeal is taken, 139 B.R. 501. The Court found St. Angelo's ob-

---

The Case Trustee's motion for an examination under Rule 2004, requests that alternatively, the Court may order a deposition under Bankruptcy Rule 7030, 7037 and 9014, which invoke the Federal Rules of Civil Procedure. However, the memorandum of points and authorities in support of the motion is entirely devoted to a discussion of Rule 2004.

jections on non-privileged matters unjustified and a failure to comply with the Court's order to submit to the 2004 examination.[7] Based on these findings, the Court sanctioned appellants under Fed.R.Civ.P. 37(b)(2) by dismissing OUST's motion to remove the Case Trustee and imposing monetary sanctions on OUST and appellant St. Angelo, personally. The Court declined to impose a lesser alternative sanction or to issue an order under Fed.R.Civ.P. 37(a)(2) first compelling OUST attorneys to answer the questions posed during the examination. The Court believed such an order would be ineffective, predicting that appellants "would continue to disobey the Court's order."

The Court found that OUST's refusal to answer questions not specifically bearing on the administration of the Dinubilo estate prevented any foundational facts to be established on any matter other than the Dinubilo case; even though, the Bankruptcy Court observed that the Case Trustee's competency in the handling of all of his cases has been placed at issue, making questions about other cases relevant. Dismissal was found to be the only adequate sanction because OUST's posture effectively prevented the Case Trustee from establishing his defense to the motion for removal.

## III

### STANDARD OF REVIEW

■ The Supreme Court in *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), held that a unitary abuse of discretion standard is appropriate when reviewing a trial court's decision to impose sanctions under Fed.R.Civ.P. 11, noting the difficulty in distinguishing between legal and factual issues in reviewing the imposition of sanctions. Before the ruling in *Cooter & Gell*, the Ninth Circuit employed a three-tiered standard to review sanction orders. *See, In re Taylor*, 884 F.2d

478, 480 (9th Cir.1989) (a court order imposing sanctions under Fed.R.Civ.P. 11, or its equivalent in the bankruptcy context, Bankruptcy Rule 9011 is reviewed as follows: findings of fact upon which the award of sanctions is based is reviewed for clear error, the legal conclusion that a sanction is appropriate is reviewed de novo, the appropriateness of the sanction awarded is reviewed for abuse of discretion).

Although the Court in *Cooter & Gell* did not deal with the imposition of discovery sanctions under Fed.R.Civ.P. 37, the Ninth Circuit has since applied a unitary abuse of discretion standard in the context of reviewing discovery sanctions under Fed.R.Civ.P. 37. *Del P. Henry, Jr. v. Gill Industries, Inc.*, 983 F.2d 943, 946 (9th Cir.1993) (quoting *Drucker v. O'Brien's Moving and Storage, Inc.*, 963 F.2d 1171, 1173 (9th Cir.1992) (a " 'court abuses its discretion when it bases the award on clearly erroneous legal or factual findings' ")). Thus, factual findings, legal conclusions and the appropriateness of the sanctions awarded are reviewed for an abuse of discretion.

## IV

### DISCUSSION

The following issues are presented by this appeal: (1) whether 'the law of the case' doctrine prohibits this Court from reviewing the Bankruptcy Court's decision requiring OUST attorneys, Kandler and Dyer, to submit to the Rule 2004 examination; (2) whether the Bankruptcy Court abused its discretion by ordering the examinations of Kandler and Dyer pursuant to Rule 2004; and (3) even if discovery was appropriate under Rule 2004, whether the sanctions imposed by the Bankruptcy Court constitutes an abuse of discretion.

Law of the case does not prevent review of the decision to order a Rule 2004 examina-

---

7. The Bankruptcy Court stated:
 Mr. St. Angelo lodged repeated objections, thereby purposefully frustrating the 2004 examination process. This course of conduct

completely disregards the order of both this Court and the District Court requiring their submission to that examination.

tion. It was not an abuse of discretion to order a Rule 2004 examination for Kandler and Dyer. The Bankruptcy Court abused its discretion by imposing the harshest sanctions available without warning appellants.

### A. Propriety of Bankruptcy Court's Order Requiring Submission to Rule 2004 Examination

■ Appellants' contest the Bankruptcy Court's initial order requiring the OUST attorneys to submit to the Rule 2004 examination. If sanctions are imposed under Rule 37(b), on appeal from the order imposing sanctions, the appellate court may consider the propriety of the prior order for discovery. *See,* 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2289 (1970).

#### 1. Law of the Case

■ The Case Trustee contends that Judge Price's decision affirming the Bankruptcy Court's order for the 2004 examination is the law of the case, which precludes this Court from considering whether the Bankruptcy Court abused its discretion in ordering the Rule 2004 examination.

■ The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. However, law of the case directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) (citing *Southern Ry. v. Clift,* 260 U.S. 316, 319, 43 S.Ct. 126, 126–27, 67 L.Ed. 283 (1922)). The doctrine is most commonly understood to permit reconsideration of a prior ruling in the same case when the evidence presented is "substantially different, controlling authority has since made a contrary decision of the law applicable to

such issues, or the decision was clearly erroneous and would work a manifest injustice." *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.,* 803 F.2d 454, 459 (9th Cir.1986) (citing *White v. Murtha,* 377 F.2d 428, 431–32 (5th Cir.1967), cited with approval in *Arizona v. California,* 460 U.S. at 619 n. 8, 103 S.Ct. at 1391 n. 8).

OUST's appeal to the District Court lead to Judge Price's opinion of April 18, 1991, in which he addressed the merits of the appeal and upheld the 2004 examination. Appellants contend that the only issue actually submitted to Judge Price was whether a stay should be issued pending appeal of the Bankruptcy Court's order requiring the 2004 examination, and as a result, their discussion on the merits of the appeal was significantly abbreviated. The Case Trustee does not dispute this contention.[8] Appellants claim they were in effect not afforded opportunity to brief or argue the merits of the Bankruptcy Court's ruling in the District Court, which amounts to a denial of due process of law.

The merits of the appeal were discussed in appellants' brief submitted to the District Court, but only to the limited extent necessary to illustrate their likelihood of success on appeal as part of their motion for a stay. The 'law of the case' doctrine does not preclude this Court from considering anew the propriety of the Bankruptcy Court's order requiring the OUST attorneys to submit to the examination.

■ The parties also address whether appellants' failure to seek review of Judge Price's decision precludes them from challenging the propriety of the Bankruptcy Court's order at this stage of the proceedings. Generally in the context of a single suit, a court's power to revisit an issue is limited by the more flexible law of the case doctrine rather than issue preclusion. *See,* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4418 (1981).

---

**8.** The record indicates that OUST filed a motion for stay pending appeal and memorandum in support thereof on April 1, 1991; OUST filed a supplemental memorandum on April 2, 1991; and the Case Trustee filed an opposition to the motion on April 5, 1991. On April 18, 1991, Judge Price issued his decision affirming the Bankruptcy Court's ruling.

All parties agree that the Bankruptcy Court's order for examination was an interlocutory decision. Therefore, the District Court's decision affirming it is also interlocutory. *In re Westwood Shake & Shingle, Inc.,* 971 F.2d 387, 389 (9th Cir.1992) ("if the underlying bankruptcy court order is interlocutory, so is the district court order affirming or reversing it"). An appeal of Judge Price's interlocutory decision to the Court of Appeals is governed by 28 U.S.C. § 1292(b).[9] Judge Price did not certify his order for interlocutory appeal. No appeal could be taken under § 1292(b).[10]

Appellants had no jurisdictional basis to seek review of Judge Price's decision and the court of appeals's authority to grant the appeal was discretionary. Appellants' failure to appeal Judge Price's decision does not foreclose review of the Bankruptcy Court's order on this appeal from final judgment of dismissal.

### 2. *Propriety of Rule 2004 Examination*

■■■ Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the court *may* order the examination of any entity." (emphasis added). A bankruptcy court's decision to order a Rule 2004 examination is reviewed under an abuse of discretion standard. *In re Hammond,* 140 B.R. 197, 200

(S.D.Ohio 1992); *In re Hawley Coal Mining Co.,* 47 B.R. 392, 393 (S.D.W.Va.1984); 8 Lawrence P. King, Collier on Bankruptcy ¶ 2004.04 (15th ed. 1993) ("Collier on Bankruptcy").

The Case Trustee sought to examine attorneys Kandler and Dyer about OUST's motion for removal. Appellants contend that a Rule 2004 examination is intended to provide parties in interest with a means of discovering information relating to the assets and financial affairs of the debtor, rather than information to assist the Case Trustee in defending himself against a charge of dereliction of duty.

■■■ The range of discoverable subject matter in a Rule 2004 examination is "unfettered and broad." *In re GHR Energy Corp.,* 33 B.R. 451, 453 (Bankr.D.Mass.1983). It is often termed a "quick fishing expedition." *In re French,* 145 B.R. 991, 992 (Bankr. D.S.D.1992) ("Bankruptcy Rule 2004 is designed to be a quick 'fishing expedition' into general matters and issues regarding the administration of the bankruptcy case . . . ."). As such, it does not offer the procedural safeguards available under the Federal Rules of Civil Procedure made applicable to discovery under Rule 9014.[11] For instance, in a Rule 2004 examination: the witness has no right to be represented by counsel except at

---

**9.** Under 28 U.S.C. § 1292(b), a court of appeals is granted jurisdiction to review an order entered by a district judge if the order states that it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Thereafter, the court of appeals may hear the appeal within its discretion.

An appeal of Judge Price's decision could not have been taken pursuant to either 28 U.S.C. § 158(d) or 28 U.S.C. § 1291, both of which limit the court of appeals' jurisdiction to appeals from "final decisions" of district courts.

**10.** Appellants could have filed a motion requesting the decision be amended to include the necessary jurisdictional language. However, it is unlikely that such a motion would have been granted considering that the propriety of the 2004 examination is part of a discovery dispute which can hardly be viewed as a controlling question of law that might materially advance

the termination of the litigation. Even further assuming that Judge Price would have amended his decision to conform to § 1292(b), the court of appeal's decision to review the order is discretionary.

**11.** Rule 9014 applies to adversary proceedings or contested matters and provides in pertinent part as follows:

In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, . . . and, unless the court otherwise directs, the following rules shall apply: 7021, 7025, 7026, 7028–37, 7041, 7042, 7052, 7054–56, 7062, 7064, 7069, and 7071. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply. . . .

The rules referred to in Rule 9014 adopt by reference the text of the comparable rule found in the Federal Rules of Civil Procedure.

the discretion of the court; there is only a limited right to object to immaterial or improper questions; there is no general right to cross-examine witnesses; and no right to have issues defined beforehand.[12] *GHR Energy Corp.*, 33 B.R. at 454.

The broad reach of a Rule 2004 examination and its curtailment of the rights of the witness when compared with the witness's rights in a deposition conducted under the Federal Rules of Civil Procedure, requires that a court not treat them interchangeably. Without any limiting principles on the use of Rule 2004 as a discovery tool, Rule 9014, adopting the Federal Rules of Civil Procedure for conducting discovery in contested bankruptcy matters, would be rendered superfluous. Two limiting principles on the Rule's application can be gleaned from the case law: 1) a Rule 2004 examination is utilized for the purpose of identifying the assets and transactions involving a debtor's estate; and 2) it is generally used as a prelitigation device, during the short time period before a matter becomes contested.

### a. Purpose of Rule 2004 Examination

The breadth of a Rule 2004 examination derives from the particular purpose for which Rule 2004 and its predecessor provisions were promulgated. Rule 2004 relates to the role of a trustee in bankruptcy. A trustee in bankruptcy is under a duty to maximize the realization of the debtor's estate by marshalling the estate's assets and instituting all necessary litigation. When a trustee takes over a Chapter 7 case, the trustee must learn quickly about the debtor entity. One of the original purposes of the 2004 examination, formerly Rule 205, was to assist the trustee in this endeavor. *See, Zydney v. New York Credit Men's Ass'n*, 113 F.2d 986 (2d Cir. 1940). A long line of cases, commencing with *Cameron v. United States*, 231 U.S. 710, 34 S.Ct. 244, 58 L.Ed. 448 (1914), have defined the purpose of a 2004 examination.

■ This purpose is to allow inquiry into the debtor's acts, conduct or financial affairs so as to discover the existence and location of assets of the estate. *See,* 2 Collier on Bankruptcy ¶ 343.04; *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr.E.D.N.Y.1991) (quoting *Cameron v. United States*, 231 U.S. 710, 717, 34 S.Ct. 244, 246, 58 L.Ed. 448 (1914) (discussing § 21(a) of the Bankruptcy Act of 1898 from which Rule 2004 is partly derived) (the object of the examination of the debtor and other witnesses is "to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, [so] that the rights of the creditor may be preserved")).

■ Third parties subject to examination pursuant to Rule 2004 are " 'only [ ] those persons possessing knowledge of the debtor's acts, conduct or financial affairs so far as this relates to a debtor's proceeding in bankruptcy.' " *Matter of Wilcher*, 56 B.R. 428, 434 (Bankr.N.D.Ill.1985) (quoting *In re GHR Energy Corp.*, 35 B.R. 534, 537 (Bankr.D.Mass. 1983)); *In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr.S.D.N.Y.1991); *In re Valley Forge Plaza Assoc.*, 109 B.R. 669, 674 (Bankr.E.D.Pa.1990). For instance, in *Wilcher*, the Bankruptcy Court held that the party sought to be examined was not properly subject to a Rule 2004 examination because he "has not been shown to have been involved in the debtor's business affairs in any way, save for his purchase of the Sherman Avenue apartment property." 56 B.R. at 434. The examination of attorneys Kandler and Dyer was sought to develop information about the Case Trustee removal motion, not because they had relevant information regarding the financial affairs of debtor Dinubilo.

The decision below relies heavily on the language of Rule 2004 which provides the examination may relate to "any matter which may *affect* the administration of the debtor's estate, or to the debtor's right to dis-

---

**12.** Discovery under the Federal Rules of Civil Procedure offers: notice to every party of the intention to depose any person; a right to have counsel present; all objections must be noted; cross examination is permitted.

charge."[13] (emphasis added). The Case Trustee suggests that because the Chapter 7 trustee administers the estate, anything which "affects" the trustee, including removal, may affect the manner in which the estate is administered. Appellants counter that the reason for Rule 2004 is to facilitate the search for property and to inquire into the financial affairs of the debtor. The identity, performance, qualifications, or resources of the trustee may or may not have a bearing on the administration of a debtor's estate. The case trustee inferentially suggests the identity of the case trustee affects the administration of the debtor's estate.

The removal motion placed at issue the Case Trustee's experience and background in handling bankruptcy cases, his resources for and performance of duties as a Chapter 7 trustee, and his alleged failure to fulfill those duties in the Dinubilo case. In response, the Case Trustee sought discovery on the professional background of attorneys, Kandler and Dyer, their experience in the bankruptcy field, their familiarity with the cases handled by the Case Trustee, and their motives for bringing the removal motion. This subject matter bears almost no relation to the administration of the debtor's estate. Most of it

concerns the OUST attorneys, personally, and their states of mind.

*b. Timing: Before a Matter Is Contested*

Consistent with its function as a "quick factual fix relative to the estate, its existence and location," *In re Silverman*, 36 B.R. 254, 259 (Bankr.S.D.N.Y.1984) a Rule 2004 examination is normally employed at the pre-litigation stage of a bankruptcy case. Once a contested matter is pending, discovery requests are granted under Rule 9014, which invokes the procedural safeguards of the Federal Rules of Civil Procedure. *See, French*, 145 B.R. at 992, ("If a contested matter or adversary proceeding is pending, Rule 2004 should not be used, but rather, the various discovery provisions of the Federal Rules of Civil Procedure should apply," (citing 8 Collier on Bankruptcy ¶ 2004.03 at 2004–6)).[14] All parties agree that the present controversy is a contested matter.[15] Appellants argue that as a matter of procedural law, the Bankruptcy Court erred in allowing the examinations to be taken under Rule 2004.[16]

The same Bankruptcy Court has agreed with appellants in *In re Aromax, Inc.*, No. 190–01484 (Bankr.E.D.Cal.). There, the

**13.** The Bankruptcy Court stated without any analysis that the "removal of a trustee is without question a matter which affects the administration of the debtor's estate...." (Bankruptcy Court, March 27, 1991).

**14.** Professor King writes:
[n]o contested matter or adversary proceeding need be on file as a prerequisite to conducting [a Rule 2004] examination; in fact, if an adversary proceeding or contested matter is pending, the discovery devices provided for in Rules 7026–37, which adopt various discovery provisions of the Federal Rules of Civil Procedure, apply and Rule 2004 should not be used. 8 Collier on Bankruptcy at ¶ 2004–6.

**15.** "Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter." Advisory Committee note on Rule 9014. The Committee explains that even "when an objection is not formally required, there may be a dispute" which is a contested matter. In fact, a matter may be "contested" merely by the fact that the Rule 2004 examina-

tion itself is being opposed. *See, In re Apex Oil Co.*, 101 B.R. 92, 101 (Bankr.E.D.Mo.1989) (explaining that a contested motion to conduct a Rule 2004 examination requires that Rule 9014 be employed).

**16.** Appellants suggest that proceeding under the Federal Rules of Civil Procedure, which are made applicable under Rule 9014, rather than under Rule 2004, would have significantly limited the scope of the discovery in the context of this case. For instance, they argue that questions seeking to elicit information concerning the credibility of the Assistant U.S. Trustee would not be permissible under the standards of Fed. R.Civ.P. 26 (adopted under Rule 7026, which applies to Rule 9014 contested matters). Those questions are not germane to the competency of the Case Trustee in handling the Dinubilo Chapter 7 proceeding, and therefore are not "relevant to the subject matter" or to matters "reasonably calculated to lead to the discovery of admissible evidence." It is noted, however, that Dyer placed his credibility in issue by submitting a factual declaration.

court quashed its own order for a Rule 2004 examination of a debtor, stating:

> [Rule] 2004 is not a substitute for discovery authorized in either adversary proceedings or contested matters which is governed by [Rule] 9014.... You are asserting a claim and in order to assert it you have to assert it under [Rule] 9014 if there is going to be an objection to your claim and apparently there is on some ground, and it seems to me that you are then obligated to proceed under Rule 7024 and take the deposition, if you want, or any other discovery matters allowable under those rules as opposed to a [Rule] 2004 [examination] which is generally related to a trustee trying to find out by way of examination whether there is any claim or other aspect of the case that he should be following.

*Id.*

■ While the Case Trustee concedes that a Rule 2004 examination is generally not proper once a contested matter is underway, he relies on *In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702, 711 (Bankr. S.D.N.Y.1991) to argue that the case law gives greater latitude to a party seeking the examination where such party is the trustee. In *Drexel Burnham,* the court concluded:

> [t]he cases are in agreement that once an adversary proceeding[17] is in progress, a creditor/party does not have a right to a 2004 examination. They are, however, in general agreement that pending litigation by or against a trustee is not sufficient cause to deny the examination.

123 B.R. at 711.

Contrary to this statement in *Drexel Burnham,* the case law has not emphasized a distinction between adversary proceedings and/or contested matters involving creditors and those involving a trustee. For instance, *In re Blinder, Robinson & Co.,* 127 B.R. 267,

274–75 (D.Colo.1991), declined to follow *Drexel Burnham,* stating:

> I do not think the cases cited by the court in *Drexel Burnham* support its conclusion and [sic] nor do I think the creditor/trustee distinction is a valid one. Furthermore, the above-quoted summary of case law overlooks significant authority to the contrary.

*Blinder, Robinson & Co.,* 127 B.R. at 275, (citing 8 Collier on Bankruptcy ¶ 2004.03[1] at 2004–5, 6) (other citations omitted).

The creditor/trustee distinction may be a valid one under certain circumstances. In keeping with a trustee's duty to maximize the realization of the debtor's estate, a court may find it necessary to expand the period of investigation in which a Rule 2004 examination is applicable so that the trustee may obtain a complete inventory of the debtor's assets. The need for a broad, informal examination did not exist here. The information sought by the Case Trustee is unrelated to the debtor's estate and concerned his alleged personal dispute with the OUST attorneys.

The Case Trustee points to the language of Rule 9014, which states:

> In a contested matter in a case under the Code ... *unless the court otherwise directs,* the following rules shall apply: Rule 7021, 7025, 7026, 7028–37, 7041, 7042, 7052, 7054–56, 7062, 7064, 7069, and 7071. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply....

(emphasis added). The language, "unless the court otherwise directs," is said to be a permissive grant of authority to the Bankruptcy Court to order a Rule 2004 examination in a contested matter. By ordering the 2004 examination, the Bankruptcy Court exercised its power under Rule 9014 and "implicitly directed that Rule 7030, which incorporates

---

17. Rule 9014 applies to adversary proceedings as well as contested matters. The advisory committee note on Rule 9014 suggests that the terms are used interchangeably in with regard to discovery matters. The Committee explained that "[w]hen the rules of Part VII are applicable to a contested matter, reference in the Part VII rules to adversary proceedings is to be read as a reference to a contested matter."

Fed.R.Civ.P. 30 for the taking of sworn testimony, not apply."

The case law uniformly holds that where a contested matter is pending, sworn testimony should be obtained via a Rule 7030 deposition rather than a Rule 2004 examination, but the phrase "unless the court otherwise directs" is consistent with the absence of mandatory language in the decisional law on this issue. *See, French,* 145 B.R. at 992 (if a contested matter is pending, "Rule 2004 'should' not be used"); *Blinder, Robinson & Co.,* 127 B.R. at 274 (quoting Professor King, 8 Collier on Bankruptcy ¶ 2004.03[1], "if an adversary proceeding or contested matter is pending, ... Rule 2004 'should' not be used"); *Cf. Ecam Publications,* 131 B.R. at 559 (once a "contested matter has been initiated, parties 'must' proceed with discovery for that litigation pursuant to the Federal Rules of Civil Procedure").

The Bankruptcy Court's order for the 2004 examination did not discuss Rule 9014 or provide any reason for abandoning the procedural safeguards applicable to a deposition in a contested matter. The Court found that "removal of a trustee is without question a matter which affects the administration of the debtor's estate...." Application of Rule 2004 to this proceeding was not in the best interests of any party or the Court, in view of the intensity of the dispute over the Case Trustee's removal and the number and complexity of privilege issues raised by the OUST attorneys, which they claimed would severely limit the scope of any examination.[18]

### c. *Establishment of Good Cause*

 Appellants claim the Rule 2004 examination was improper because the Case Trustee failed to show good cause for the examination. An order for examination under Rule 2004 may be granted *ex parte,* but a party to be examined may oppose the examination by a motion to quash the subpoena. *Wilcher,* 56 B.R. at 434. Once a motion to quash has been filed, the examiner bears the burden of proving that good cause exists for taking the requested discovery. *Wilcher,* 56 B.R. at 434 (citing *Freeman v. Seligson,* 405 F.2d 1326, 1336 (D.C.Cir.1968)).

 Generally, good cause is shown if the examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice. *Boeing Airplane v. Coggeshall,* 280 F.2d 654, 670 (D.C.Cir.1960); *Wilcher,* 56 B.R. at 434. Appellants contend the Case Trustee did not satisfy this burden because the only evidence he presented was the unsupported statement of his attorney that discovery was necessary to respond to OUST's motion.

That declaration asserted attorneys Kandler and Dyer had information to support his defense that the removal motion was unsound and unfounded. The examination sought the information used by OUST to file the removal motion; to inquire about alleged improper motivation of the OUST attorneys;[19] and to question Mr. Dyer about his factual declaration filed in support of the motion. Good cause was presented.

The acutely contentious dispute, centered on the competence, performance, and personality of the Case Trustee, and implicating substantial evidentiary issues, made the choice of a 2004 examination inappropriate. The choice was not, however, an abuse of discretion, because of the colorable justification presented to utilize Rule 2004. Nothing is gained in second guessing the Bankruptcy Judge.

### B. *Propriety of Decision to Impose Sanctions*

 The Rule 2004 examination was allegedly unproductive. The Case Trustee

---

18. This conclusion does not rest on appellants' additional argument that attorneys Kandler and Dyer are exempt from examination in their quasi-prosecutorial role as assistant U.S. Trustees.

19. *See,* Letter by Mr. Hertz, counsel for the Case Trustee, dated February 27, 1991, addressed to Mr. St. Angelo, in which Mr. Hertz outlines the subjects to be covered in the 2004 examination, exhibit # 4 to Hertz' Declaration, in Support of Motion to Require Witnesses to Appear and Testify.

moved pursuant to Fed.R.Civ.P. 37(a)(2) for an order compelling attorneys Kandler and Dyer to answer questions to which objections had been stated.[20] He also moved for sanctions pursuant to Fed.R.Civ.P. 37(b)(2).[21] After inviting the examinees to raise their objections, question by question, and having acknowledged in open court that substantial privilege issues had been raised, the Bankruptcy Court imposed ultimate sanctions. This decision was reached without ruling on any of the objections made to questions at the 2004 examination; without first issuing an order to compel; and without having given the examinees an opportunity to comply. The court reasoned that an order to compel would be futile.

The Court expressed impatience with the OUST attorneys' conduct during the Rule 2004 examination, particularly as to objections raised on the ground of relevance. The record establishes appellants partially complied with the Court's order by submitting to the 2004 examination. The record also establishes appellants answered some questions and objected to others, following the procedure prescribed by the Court. There is no support for the conclusion that appellants would not have complied with an order to answer specific questions.

The order for the Rule 2004 examination expressly preserved OUST's right to object to any questions on matters protected from disclosure by the attorney/client or work-product privileges, Department of Justice regulations, or prohibited from release by the Privacy Act, 5 U.S.C. § 552a. Such objections were to be made on a question-by-question basis during the examination to preserve the privileges and to enable rulings to be made by the Bankruptcy Judge. Appellants complied with the Court's order in appearing for the examination.[22] They raised specific objections on matters they believed to be privileged as part of their deliberative process, and provided answers on matters they believed were discoverable.

The Court found that OUST violated the 2004 examination order because many of OUST's objections were based, not on the privileges identified in the Court's order, but rather, on the grounds of "relevance" or "being outside the scope of Rule 2004." The Court had previously expressed the view that a Rule 2004 examination has a broad application. Nevertheless, the precise scope of the Rule 2004 inquiry was not defined by the Court's order. Appellants acted reasonably in making specific objections to the Case Trustee's questions during the examination to establish a record for the Court to rule upon at a later time.

Appellants argue that even if the objections amounted to a failure to testify, sanctions are premature in the absence of an order to compel. As long as a party is found in violation of a court order, an order to compel is not a necessary prerequisite to a decision to impose sanctions. *Professional Seminar Consultants v. Sino American Technology Exch. Council, Inc.*, 727 F.2d

---

**20.** Rule 37(a)(2) states in pertinent part: "If a deponent fails to answer a question … the discovering party may move for an order compelling an answer…."

**21.** Rule 37(b)(2) states in pertinent part: "If a party … fails to obey an order to provide or permit discovery … the court in which the action is pending may make such orders in regard to the failure as are just…."

**22.** Appellants take the position that the Court's order styled "Order Requiring Appearance by Edward Kandler and Gary Dyer under Rule 2004," only required the OUST attorneys to physically appear at the examination without having to testify. This contention is without

merit. The motion filed by the Case Trustee for an order under Rule 2004 requiring Kandler and Dyer to submit to the deposition; OUST's opposition to the motion; and the Bankruptcy Court's order of March 27, 1991, along with its findings of fact and conclusions of law, all deal with one issue: whether attorneys Kandler and Dyer may be *examined* by the Case Trustee under Rule 2004. As part of the Court's order, OUST was granted permission to refuse to answer those questions deemed objectionable based on claims of privilege, privacy or work-product. Thus, it was understood, if not explicitly stated, that attorneys Kandler and Dyer were to answer the questions posed by the Case Trustee's counsel, not simply to appear at the deposition.

1470, 1474 (9th Cir.1984); Fed.R.Civ.P. 37(b)(2). Nonetheless, the Ninth Circuit has noted that "it is common practice for trial courts to issue warnings or to make orders of default or dismissal conditional on a party's continued noncompliance with an outstanding order to compel." *In re Rubin,* 769 F.2d 611, 616 (9th Cir.1985). The Ninth Circuit in *Rubin,* concerned that the sanctioned party had not been made aware of the insufficiency of his responses, noted that concepts of notice and warning entitle a party to "some indication by the court of how its discovery responses have been deficient." 769 F.2d at 616.

By making objections to specific questions, Appellant St. Angelo was properly framing discovery issues for resolution by the Bankruptcy Court in the manner the Bankruptcy Judge had prescribed. The Bankruptcy Court was then in a better position to rule on the validity of the objections and issue an order compelling appellants to provide answers accordingly. *See, Liew v. Breen,* 640 F.2d 1046, 1050 (9th Cir.1981) ("a good faith dispute concerning a discovery question might, in the proper case, constitute 'substantial justification'" [for the failure to comply with the court's order]).

■ Warnings by the sanctioning court are particularly important in upholding the use of severe sanctions, as were imposed here in the form of dismissal and individual monetary sanctions. *Rubin,* 769 F.2d at 616, (citing *Professional Seminar Consultants,* 727 F.2d at 1474 (district court entered order to produce or risk having certain facts established)); *Rainbow Pioneer No. 44–18–04A v. Hawaii–Nevada Investment Corp.,* 711 F.2d 902, 904 (9th Cir.1983) (magistrate's order to respond to interrogatories and produce documents contained warning that failure to comply would result in default); *United States v. Sumitomo Marine & Fire Insurance Co.,* 617 F.2d 1365, 1367 (9th Cir.1980) (district court entered order that unless interrogatories were answered by certain date, complaint would be dismissed).

The Bankruptcy Court cited three decisions for the proposition that failure to comply with an order for a Rule 2004 examination warrants sanctions under Fed.R.Civ.P. 37(b)(2). All are readily distinguishable. In each case, there was willful and persistent failure to provide discovery in defiance of more than one court order.

In *In re Sofro,* 117 B.R. 745 (Bankr. S.D.Fla.1990), sanctions were imposed after the Court issued three separate orders, all of which failed to procure a party's attendance at a Rule 2004 examination and to produce the requested documents. Additionally, the Court found that during the examination, the sanctioned party lied about where certain documents were located. *Id.* at 750.

In *In re Alderson,* 114 B.R. 672, 678 (Bankr.D.S.D.1990), sanctions were imposed on a debtor who had been "advised by the Court on many occasions to cooperate in the discovery process." Most notable were instances where the "debtor made intentional omissions, gave evasive responses, and made other fraudulent misrepresentations at the [creditors'] Section 341 meeting, the 2004 examination, and in hearings before this Court." *Id.* at 678. The debtor also failed to provide records pursuant to court order. *Id.* at 677.

In *In re Olson,* 105 B.R. 654, 655–56 (D.Kan.1989), the debtors continually substituted counsel in an effort to delay a Rule 2004 examination and production of records. The Court's order for a Rule 2004 examination contained a warning that "the court will entertain a motion for sanctions by the plaintiff in the event the defendants fail to appear for their 2004 Examinations. . . ." *Id.* at 655. The debtors also failed to provide an accounting pursuant to another court order. *Id.* at 655–56.

In this case, the actions of appellants fall far short of the egregious misconduct found in the cases relied on by the Bankruptcy Court. Appellants opposed the Case Trustee's request for a Rule 2004 examination. They appealed the Bankruptcy Court's ruling that a Rule 2004 examination was proper to the District Court. When their appeal failed, appellants attended the examination. Mr.

St. Angelo made objections during the examination consistent with OUST's interpretation of Rule 2004. The Court found this to be obstructionist behavior, noting that two courts had determined a Rule 2004 examination of broad scope was appropriate. Assuming that this ruling was correct, less drastic sanctions were available and should have been utilized.

### C. Propriety of Sanctions Imposed

The sanctions imposed were dismissal of OUST's motion for removal, and monetary sanctions against OUST and appellant, St. Angelo, individually. Such sanctions are inconsistent with the purposes of Fed.R.Civ.P. 37(b), and excessive in proportion to appellants' conduct.

■■■■ One purpose served by Rule 37(b) sanctions is to ensure that the disobedient party will not be able to profit from its own failure to comply. *See, Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365 (9th Cir.1980) (citing *Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir.1979)). No finding was made as to how the United States Trustee's Office, a governmental entity, would profit from its actions.

A second justification is to secure compliance with the particular order at hand. *Sumitomo Marine & Fire Ins. Co.*, 617 F.2d at 1369. The Bankruptcy Court reasoned that dismissal was proper because OUST "could not be made to comply" with the Court's order. Even assuming that some of OUST's objections during the examination were unwarranted, there is no reason to believe that OUST would have disregarded a specific order to answer questions or any other order the Court made.

A third purpose served by the imposition of sanctions is the general deterrent effect the order may have on the instant case or on other litigation. *Id.* Deterrence was offered as the Court's primary justification for choosing the most drastic sanctions available. The Court expressed great concern for the public

interest, noting that the disobedient party in this action is a government agency which should set the example of compliance with court orders.

The context of the present discovery dispute must be kept in perspective. One of the duties performed by the Office of the United States Trustee is to "establish, maintain and supervise a panel of private trustees" who serve as trustees in Chapter 7 cases. 28 U.S.C. § 586(a)(1). In carrying out its function as a "bankruptcy watchdog," OUST brought a motion to remove the Case Trustee from debtor Dinubilo's Chapter 7 bankruptcy, on the grounds that the Case Trustee had failed to perform his statutory duties. The motion presented serious issues. OUST alleged the Case Trustee failed to expeditiously pursue improper transfers of real property, failed to investigate the presence of equity in real property, and failed to collect and reduce to money the assets of the estate in an expeditious manner. Assuming OUST's allegations have any basis in fact, it is difficult to see how the public interest has been served by dismissing OUST's motion for removal, leaving the Case Trustee to act as trustee without resolving these charges on the merits.

The Case Trustee claims to be the victim of an unjustified vendetta by OUST. This claim can best be analyzed through discovery with procedural protections afforded by the Federal Rules of Civil Procedure, which serve the public interest by protecting the rights of all parties.

The Bankruptcy Court considered a number of factors in deciding which sanctions to impose on OUST and appellant, St. Angelo. These are: 1) notice and warning to the party that is to be sanctioned; 2) the history of dilatory conduct demonstrating bad faith; 3) the effectiveness, availability, and effect of lesser alternative sanctions; 4) the severity of the sanctions imposed; 5) the diligence of the party against whom the motion is made; 6) the impact on the estate and the prejudice to the opposing party; 7) the public interest; 8) the court's need to manage its docket; and

9) the sanction must specifically relate to the particular claims at issue in the order.

In contrast to the Bankruptcy Court's analysis, these factors weigh convincingly against the harsh sanctions imposed.

### 1. Notice and Warning

The Court recites the procedural history of this discovery dispute to conclude that ample notice and warning were given. Nothing in the case history indicates that notice was given by the Court that ultimate sanctions would be imposed.

OUST exercised its right to oppose the Case Trustee's request for an inquiry into the mental processes of U.S. Trustee's Office and to appeal the Bankruptcy Court's order. When the Court's order was affirmed, the OUST witnesses attended the examination. In the court hearing on the motion to compel and/or for sanctions, appellants evidenced no disrespect to the Court. The first time OUST was found to be in violation of a court order was when the sanctions were actually imposed. No warning was provided in the Court's order requiring the examination. More significantly, no opportunity was offered to the OUST attorneys to answer the questions posed, after evidentiary rulings on privilege issues.

### 2. Continuing Dilatory Conduct and Lack of Diligence

The Court suggests appellants have disobeyed several discovery requests. The Court states that appellants violated two court orders requiring them to submit to the 2004 examination: the Bankruptcy Court's order and the order of the District Court.[23] The District Court simply affirmed the decision of the Bankruptcy Court ordering the examination, after which, appellants attended and submitted to the Rule 2004 examination.

The Bankruptcy Court also refers to "many instances" where appellants engaged

in conduct described as "hostile," "dilatory" and "unprofessional." The 'many instances' noted appear to relate to one event: the Rule 2004 examination of Kandler and Dyer. The Court reviewed the instances where appellants objected during that examination and concluded that appellants objections amounted to a violation of the Court's order.

### 3. Effectiveness and Availability of Lesser Alternative Sanctions

The Bankruptcy Court based its decision not to issue an order to compel or to impose a lesser alternative sanction than dismissal on its anticipation that appellants would either defy such an order or appeal it. Neither expectation is supported by the record below.

First, the Court's prediction that an order to compel would be appealed may not serve as a valid basis for dispensing with such an order in favor of immediate sanctions. The prospect that a trial court's decision will be appealed is inherent in the litigation process.

Second, the fact that objections were made to questions believed to be improper does not provide a well-founded basis to assume that OUST, a governmental agency in a quasi-prosecutorial capacity, would later defy an unambiguous order of the court. OUST's attorneys were deferential and respectful to the court.

### 4. Severity of the Sanctions Imposed and Relation to the Particular Claim at Issue

■ Dismissal as a discovery sanction constitutes a denial of access to justice and thus, is generally considered a sanction of last resort, applicable only in extreme circumstances. *See, Rubin,* 769 F.2d at 618; *Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334, 1337 (9th Cir.1985); *Sumitomo Marine & Fire Ins. Co.,* 617 F.2d at 1369. In *Fjelstad,* for instance, the defendant filed

---

**23.** For instance, the Court stated: "[b]oth this Court and the District Court ordered submission to the 2004 examination, and those *orders* have

repeatedly been disregarded, in substance, by the United States Trustee's Office." (emphasis added).

incomplete and misleading interrogatory answers and delayed providing information for over a year despite repeated court orders compelling responses, imposition of attorneys' fees and $50,000 as sanctions, and an express warning that sanctions would increase if further discovery problems arose. 762 F.2d at 1337–38. Defendant's continued failure to comply prompted the court to grant plaintiff's motion for a default judgment (the equivalent of dismissal as a sanction against a plaintiff). The Ninth Circuit reversed, holding that imposition of a default judgment against defendant was too severe a sanction and offended notions of due process. *Id.* at 1343.

OUST believed that a Rule 2004 examination was improperly ordered. OUST, through the legally available means of appeal, sought review of the Bankruptcy Court's order. When its appeal failed, it did not refuse to attend or submit to the examination. The "disobedient" conduct of appellants consists of raising objections during the 2004 examination which the Court deemed improper. OUST's objections were consistent with its legal interpretation of the role of a 2004 examination: to acquire information on the existence and whereabouts of the debtor's estate.

### 5. Prejudice to the Case Trustee

The degree to which the opposing party is prejudiced by his opponent's failure to permit discovery should be considered in determining the severity of the sanction to be imposed. *Rubin,* 769 F.2d at 617. In support of its decision to dismiss OUST's motion, the Bankruptcy Court noted that the Case Trustee has been prejudiced by OUST's conduct. The Court expressed concern over the Case Trustee's inability to defend the removal motion without a meaningful 2004 examination. Moreover, the Case Trustee will continue to operate under a "cloud of unprofessionalism and incompetence ... unless the allegations are proven through a fair hearing on the merits." (Bankruptcy Court, November 7, 1991).

It is difficult to see how these very legitimate concerns for a fair hearing on the merits weigh in favor of dismissing the action. Dismissal prevents an adjudication on the merits from taking place altogether. Other options, such as issuing an order requiring OUST to respond to the objected questions, would have assisted the Case Trustee to advance his defense and allowed the charges lodged against him to be litigated.

### 6. Public Interest

As already discussed, dismissal of OUST's motion to remove the Case Trustee disserves the public interest. OUST is responsible for ensuring that bankruptcy cases are properly managed by the trustees so that repayment on debts to the creditors may be maximized. OUST's motion to remove directly challenges the Case Trustee's competency to fulfill his duties as a trustee. The importance of addressing the merits of the motion is heightened by the fact that at the time the motion for removal was pending, the Case Trustee was the acting trustee in 19 bankruptcy cases in addition to the Dinubilo case.

### 7. Docket Management

Based on the Court's prediction that an order to compel responses to questions would only generate additional objections and further appeals, the Court reasoned that the interest of judicial economy would be served by dismissal. OUST should not be penalized for the possibility that it will exercise its right to appeal a decision by a trial court. The interest of judicial economy, while a formidable concern of an overburdened judicial system, cannot be permitted to override the interest of ensuring fairness to the parties.

Competing policies created the dilemma which faced the Bankruptcy Court: economy, expedition and informality in bankruptcy proceedings, weighed against the entitlement of any party to a contested matter to the protections of the Federal Rules of Civil Procedure governing discovery. Here, the Court decided that OUST and its attorneys were not meeting the spirit of its order for the Rule 2004 examination by objecting to

questions on relevance grounds. No other manner exists to preserve an issue for appeal except to object or to reserve a continuing objection to a line of questioning.

An overview of this case reveals an apparently personal dispute that has affected the objectivity of all concerned. Although the sanctions imposed were excessive, OUST and its attorneys are hereby given notice that improper objections in the future will not be countenanced. Any obstructionism will be met with appropriate sanctions.

The Bankruptcy Judge is free to revisit the issue of monetary sanctions against parties or attorneys in view of this opinion. It is not intended that the Bankruptcy Court should not exercise appropriate discretion to protect the integrity of its orders.

## V

## CONCLUSION

The Bankruptcy Court's decision to impose sanctions is REVERSED and the sanctions are VACATED. OUST's motion to remove the Case Trustee is hereby REINSTATED. On remand, the Bankruptcy Court shall review the issue of monetary sanctions in light of the views expressed in this opinion. All subsequent discovery on the removal motion shall be conducted pursuant to the Federal Rules of Civil Procedure made applicable to contested matters through Bankruptcy Rule 9014. The Case Trustee's request for attorney's fees and costs incurred in defending this appeal is DENIED.

SO ORDERED.