**In the Matter of J & R TRUCKING, INC., Debtor**

**and**

**In the Matter of Weiss Trucking Co. Inc., Debtor.**

**Nos. 09–13395, 09–15120.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

June 18, 2010.

Zachary A. Witte, Locke & Witte, Fort Wayne, IN, for J & R Trucking.

Daniel J. Skekloff, Skekloff, Adelsperger & Kleven, Fort Wayne, IN, for Weiss Trucking.

Laura B. Bacon, Rosemont, IL, for Central States, Southeast and Southwest Areas Pension Fund.

Geoffrey S. Lohman, Fillenwarth, Dennerline, Groth & Towe, LLP, Indianapolis, IN, for Indiana Teamsters Health Benefits Fund.

### DECISION ON MOTION FOR 2004 EXAMINATION

ROBERT E. GRANT, Chief Judge.

These cases are both pending under Chapter 7 of the United States Bankruptcy Code. They also present a common issue, raised by similar parties seeking the court's permission to conduct 2004 examinations. As a result, they are being decided together.

In J & R Trucking, the Central States, Southeast and Southwest Areas Pension Fund and the Indiana Teamsters Health Benefits Fund have filed a joint motion asking the court to authorize them to examine representatives of the debtor and another entity, Montgomery Trucking, Inc., pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. Their purpose is threefold. First, they want to determine whether there are any other trades or businesses which were under common control with the debtor on the date it withdrew from the pension fund

and, therefore, which might be liable for the debtor's obligations to that fund. Second, they want to determine if Montgomery Trucking might be liable, as a successor to the debtor, for the debtor's obligations to both movants. Finally, they want information concerning transfers made prior to the petition, which might be recoverable by the trustee.

In Weiss Trucking, the pension fund has filed a similar motion, seeking to examine representatives of that debtor. As in J & R Trucking, it wants to determine whether there are any other trades or businesses which were under common control with the debtor on the date it withdrew from the pension fund and, therefore, which might be liable for the debtor's obligations to it. It also wants information concerning transfers made prior to the petition, which might be recoverable by the trustee.

In each case, movants argue that, if third parties are identified who may be liable to them for either debtor's obligations, collecting from those other entities would reduce their own claims against the estate, yielding more money for other creditors, as would the recovery of avoidable transfers. This, movants contend, makes the requested inquires relate to the conduct and financial condition of the debtors, and to matters which might affect the administration of their estates; thus, Rule 2004 permits the requested examinations.

Although requests for a 2004 examination are usually considered ex parte, *see e.g., In re Dinubilo,* 177 B.R. 932, 943 (E.D.Cal.1993), these motions struck the court as unusual. As a result, it scheduled them for hearings. In doing so, the court also indicated that it wanted to address "the propriety of using a Rule 2004 exam to identify third parties who may also be liable to the movant" and invited the parties to file briefs directed to that issue prior to each hearing. The matter is before the court following the arguments presented to it at those hearings and in the briefs which counsel filed.

The briefs filed in response to the court's invitation do not specifically address the particular issue the court identified or direct the court's attention to any authority supporting the use of a 2004 examination in that fashion. That issue was "the propriety of using a Rule 2004 exam to identify third parties who may also be liable to the movant." Rather than facing the issue head on, movants' briefs speak to the broad scope of a 2004 examination—anything that relates to the actions or finances of the debtor or to the administration of the bankruptcy estate—and then embark upon an explanation for why there might be third parties who may also be liable for the debtors' obligations to them. In a Rube Goldberg-like fashion, movants argue that if they are able to identify such third parties, and then successfully collect from them, doing so will reduce their claims against the bankruptcy estate, thereby enhancing the distribution to other creditors. That potential impact on the rest of the creditor body[1] supposedly serves as a bankruptcy purpose for the requested examinations, as does the desire to identify potentially avoidable transfers.

While movants have advanced a creative argument in support of their requests, the argument ignores the true, underlying purpose for a 2004 examination.

---

**1.** The argument assumes that collecting from third parties would eliminate movants' claims against the bankruptcy estate entirely, rather than simply substitute one creditor for another. While the court accepts the assumption, *but see,* 11 U.S.C. § 509(a), if movants' success in collecting from a third party merely substitutes that party for the original creditor there would be no effect on the overall creditor body.

If accepted, it would transform the rule from an investigatory device, designed to expedite the administration of the bankruptcy estate, into something not unlike a proceeding supplemental, which creditors could use in an effort to collect the amounts due them outside the bankruptcy proceeding. Such an expansion is not something the court is inclined to embrace.

■ Rule 2004 of the Federal Rules of Bankruptcy Procedure allows the court to authorize the examination of any entity as to "the acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate or to the debtor's right to a discharge." Fed. R. Bankr.P. Rule 2004(b). The opportunity for such an examination is available to "any party in interest," Fed. R. Bankr.P. Rule 2004(a), but whether or not the court allows the examination is a matter committed to its discretion, *In re Rosenberg,* 303 B.R. 172, 175 (8th Cir. BAP 2004); *Dinubilo,* 177 B.R. at 939, and requires a sufficient cause. *Dinubilo,* 177 B.R. at 943; *In re Symington,* 209 B.R. 678, 687 (Bankr. D.Md.1997); *Matter of Wilcher,* 56 B.R. 428, 434 (Bankr.N.D.Ill.1985). *See also,* Norton Bankruptcy Rules, 2009–10 ed., Rule 2004 ed. comment (c), pp. 136–37 (Creditors do not have an absolute right to conduct examinations under rule 2004 "which provides that the court 'may order' an examination. One can readily visualize a situation where creditors may want to use this section to deal with their special problems and use the section as a substitute for discovery.").

■ Although a Rule 2004 examination is obviously an investigatory device

and it is conducted under oath, it should not be confused with discovery or a discovery deposition. *See generally, Dinubilo,* 177 B.R. at 939–40; *Symington,* 209 B.R. at 683–85; *Wilcher,* 56 B.R. at 433–34; Norton, Rule 2004 comment (c), p. 137. The two are different, both in terms of the context in which they occur and the scope of the requested examination. Discovery can only take place in the context of some type of dispute—be it an adversary proceeding or a contested matter—and the scope of the inquiry is limited to issues which are relevant to that dispute. *See,* Fed.R.Civ.P. Rule 26(b)(1). A 2004 examination, on the other hand, not only does not require the existence of litigation to justify the inquiry, but, such a dispute prevents recourse to it. A 2004 examination is not a substitute for discovery; if the traditional discovery tools are available the potential examiner is required to use them and may not take advantage of Rule 2004. The fact that a Rule 2004 examination is taking place outside the context of an identifiable dispute influences not only its availability but also its scope. Unlike traditional discovery, which narrowly focuses on the issues germane to the dispute, Rule 2004 has been rightly characterized as a "fishing expedition." It is a broad-ranging inquiry into the debtor's assets, liabilities, financial affairs and anything else that might affect the administration of the bankruptcy estate.

■ The broad scope of a 2004 examination arises out of its purpose. Particularly in chapter 7 cases, such as the ones before the court, it is an investigatory device trustees can use in order to quickly gather the information they need to do their job properly.[2] *See, Dinubilo,* 177 B.R. at 940;

---

**2.** Although this case is pending under chapter 7, Rule 2004 applies to cases pending under all chapters of the Bankruptcy Code. Under other chapters of the Bankruptcy Code, par-

ticularly chapter 11, creditors and other parties in interest, such as the various committees that might be appointed, have different interests and a greater involvement in the

*In re Bennett Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr.N.D.N.Y.1996); *In re Valley Forge Plaza Associates,* 109 B.R. 669, 674 (Bankr.E.D.Pa.1990); *Wilcher,* 56 B.R. at 433–34; In re *Good Hope Refineries, Inc.,* 9 B.R. 421, 423 (Bankr.Mass. 1981). That job, of course, is to investigate the debtor, and the assets of and claims against the bankruptcy estate, turn the assets into cash and distribute those funds to creditors, all as expeditiously as possible. 11 U.S.C. § 704. Ideally, those with knowledge of such things will voluntarily cooperate with the trustee and give the trustee access to the information they have concerning the debtor's affairs. Unfortunately, that is not always the case, and so Rule 2004 provides a vehicle by which the trustee can compel that "cooperation." It allows the trustee to do the necessary investigatory work without the need for initiating formal litigation which would trigger the traditional discovery tools. Indeed, one purpose for such an examination is to give the trustee the information needed to determine whether litigation should be filed.

■ In assessing the propriety of a request for a 2004 examination, its purpose as an investigatory device arising out of the needs of the trustee should be kept in mind, and where a proposed examination goes beyond that purpose it should be carefully scrutinized. Here, both motions, although couched in the rule's language of matters affecting the administration of the estate and investigating the conduct of the debtor, exceed those boundaries. Remember, these are chapter 7 cases and it is the trustee's the duty to investigate the debtor's affairs and the rights of the bankruptcy estate. To the extent the movants seek to discover avoidable transfers, they are

intruding upon the trustee's duties and taking those duties upon themselves. While the court may understand their curiosity, there is nothing the movants could do with that information once they got it. They could not act upon it, or seek to recover any such transfers; the trustee has the exclusive right to do so. *Matter of Perkins,* 902 F.2d 1254, 1258 (7th Cir.1990) (If a third party tries to prosecute a cause of action belonging to the trustee, the action should be dismissed.). So, in that sense, their examination can serve no real purpose. While movants may genuinely want to help the trustee, should the trustee desire that assistance, they must do so directly, acting for, at the behest of, and in the name of the trustee, and not indirectly, in a manner that treats the trustee as simply an incidental beneficiary of an endeavor actually undertaken for someone else. *Cf. Matter of Vitreous Steel Products Co.,* 911 F.2d 1223, 1231 (7th Cir.1990) (trustee may accept help from creditors but creditors may not act in their own name to protect the interests of the estate).

As for movants' desire to identify third parties who may also be liable to them, that, quite simply, is neither this court's concern nor the purpose of Rule 2004. *Cf., In re Doctors Hospital of Hyde Park, Inc.,* 308 B.R. 311, 317–18 (Bankr.N.D.Ill.2004) (bankruptcy court has no jurisdiction over creditor's action to collect from third parties). No matter how artfully one tries to disguise the requested examinations, by dressing them up in the robes of bankruptcy administration, their real purpose is to identify another entity movants might be able to collect from, and whether those efforts would have any impact on the bankruptcy estate is of no real concern to

---

administration of the bankruptcy estate; they may also have a correspondingly greater need to use to Rule 2004. As a result, decisions

from chapter 11 cases authorizing the use of 2004 by such entities are of little use here.

them. Movants understandably want to their money, but that does not justify turning a tool that has been developed to efficiently administer bankruptcy estates into a private collection device for creditors. Movants have other tools and other fora which they can use to investigate their rights against third parties and to collect the amounts they are owed. They should use them and not Rule 2004.

The motions will be denied and orders doing so entered.